## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MBI GROUP, INC.,** *et al.,* | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 1:07-cv-00637 (JDB)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CREDIT FONCIER DU CAMEROUN,** | : | |
| *et al.,* | : | |
| **Defendants.** | : | |

### PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO VACATE DISMISSAL BECAUSE OF FAILURE OF CONDITIONS AND FOR RECONSIDERATION AND TO ALTER OR AMEND JUDGMENT AND ORDER

Plaintiffs MBI Group, Inc. ("MBI") and Atlantic Group, SCI ("Atlantic",

collectively with MBI "Plaintiffs"), by and through undersigned counsel, and, pursuant to

this Court's order entered July 24, 2008, submit this memorandum in reply to the

opposition of defendants Credit Foncier du Cameroun ("CFC") and the Republic of the

Cameroon ("Cameroon, "collectively with CFC "defendants") to plaintiffs' motion to

vacate dismissal because of the failure of conditions, and for reconsideration and to alter

or amend judgment and order.

**I.    The Conditions Imposed by the Court Have Not and Cannot be Met by
Cameroon's Courts**

Defendants concede, as they must, that "(t)he court registry automatically requests

the payment of a deposit on the filing of a suit, which it usually calculates on the basis of

5.25% of the amount claimed.[1]" Defendants' Opposition, at 4. And *see* declaration of

---

[1] Defendants complain that the evidence of rejection of the filing in the Cameroon is not newly-discovered evidence. Defendants' Opposition, at 3-4. Obviously, the rejection had not occurred at the time that plaintiffs filed their opposition to defendants' motion to dismiss. To the extent that defendants are contending that the existence of the fee is not newly-discovered evidence, plaintiffs dispute the suggestion

Akere T. Muna ("Muna decl."), appended as Document 28-2 to Defendants' Opposition, at ¶7. They also concede that the filing fee for this case would be approximately twenty five million dollars ($25,000,000.00). *Id.*

Nor do defendants dispute that, in conformity with Cameroon law, plaintiffs' complaint in the Cameroon was rejected for the failure to pay the twenty five million dollar filing fee. Plaintiffs' Motion, at 2. And *see* Declaration of Nkana J. Jules ("First Nkana Decl.") appended thereto. *See also* Certificate of Non-Enrollment, **Plaintiffs' Exhibit ("PX") D**, appended to the Second Declaration of Roger Tchoufa (Second Tchoufa decl."), appended hereto as **PXE**.

Instead, defendants claim that they, through a "procedure" for which they identify no rule, regulation or statute, were able to obtain an "order" [2] which "permit(s) the filing of plaintiffs' lawsuit." Muna decl., at ¶ 13.[3]   The issuance of that order – inarguably

---

that enforcement of this court's conditions must  be done in the procedural context of a motion under Fed.R.Civ.P. 60 (b).  Moreover, it was the burden of defendants to establish the availability of an alternative forum, and plaintiffs' expert on Cameroon procedure was notably silent on the requirement of a filing fee.

Defendants also complain about "(p)laintiffs' inflated claim for damages."  But defendants offer not a scintilla of evidence that that damages claim is inflated. Equally important, it is defendants who insist that plaintiffs' case – as filed in the United States, presumably including its *ad damnum* clause – is susceptible of resolution by the Cameroon courts.

[2] Exhibit B, appended to the Muna declaration, appears to be a collection of documents, all of which are in French, and, inexplicably,  none of which is translated into English.  As we have said before, "[i]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.... [P]arties are required to translate all foreign documents into English." *United States v. Rivera-Rosario*, 300 F.3d 1, 5, 7 n. 4 (1st Cir.2002). The submission of foreign language documents unaccompanied by English translations is error and in ordinary circumstances would bar those documents from consideration by the court. *See United States v. Contreras Palacios*, 492 F.3d 39, 43 n. 7 (1st Cir.2007). And *see* Fed.R.Civ.P. 44(a)(2) (setting out procedures for proof of a foreign record).  This court should give no consideration to the documents appended as Exhibit B to the Muna declaration.  Moreover, as is discussed in the following note, the declarant's description of the order, when juxtaposed against his description of the relief sought in his "granted" motion, can best be described as elliptical.

Among those documents, apparently, is the order to which defendants refer.

[3] Defendants' declarant describes the content of his motion to the High Court of Yaounde, Muna decl. at ¶12, and declares that the motion was "granted," *id.* at 13, but his description of the order provides no detail

violative of all applicable Cameroonian law and doomed to be discarded the moment the attention of the American judiciary ends – is not only insufficient to establish the availability of an alternate forum; it is dispositive evidence of the subordination of the Cameroon courts to the whims and demands of the government of the Cameroon.

As noted above, defendants' declarant fails to identify the procedural justification for any alleged filing fee "deferral."[4] The reason for that failure is clear: no procedure exists in Cameroon law which would have permitted either plaintiff in this case to have obtained a deferral or reduction of the fee.

As former Cameroon Bar Association president Patrice Monthe explains: pursuant to Article 24 of the Cameroon code of civil and commercial procedure, with the exception of "legal assistance,"[5] no filing fee deferral is permissible. *See* declaration of Patrice Monthe, appended hereto as **Plaintiffs' Exhibit ("PX") F**.[6] He concludes: "(a) matter filed in a Civil court in Cameroon cannot be deferred or entertained on its merits when the prerequisite deposit has not been paid...." *Id.*, at 3.

Plaintiffs were not entitled to "legal assistance," and nothing in the records provided by defendants suggests that "legal assistance' was considered or authorized. As Sylvestre Mben, a Cameroon lawyer for twenty years and a member of Lawyers Without Borders states:" said court order ... is flagrantly illegal....In twenty years of professional

---

on the terms or conditions of any "deferral." *See* Muna decl., at ¶8 (ostensibly describing fee deferrals). In fact, the order does not appear to defer or otherwise modify any required fee. It merely purports to "register" the matter for a hearing on July 23, 2008.

Plaintiffs are advised that nothing transpired on July 23, 2008, and the matter was re-scheduled for August 28, 2008.

[4] Whether plaintiffs should simply accept defendants' "gift horse" is discussed below.

[5] Discussed below.

[6] PX A, B, and C were attached to Plaintiffs' Motion.

practice, I have never yet seen such a court order and I challenge (defendants) to produce

a single precedent of the sort." Declaration of Sylvestre Mben ("Mben decl."), **PX G**, at

¶¶ 3, 9. In support of his conclusion, he declares that:

> 4.  ...The only possibility of not having to deposit 5% of the sum
> requested in the suit consists in petitioning the legal aid commission in
> conformity with Decree no. 76/521 dated November 9, 1976, bearing upon
> the organization of legal aid, and not Madam Presiding Judge of the
> Higher Court.
>
> 5. In conformity with the above cited Decree no. 76/521 dated November
> 9, 1976, legal aid is provided by a commission constituted as follows:
> - The Presiding Judge of a Lower Court or a sitting magistrate;
> - The Prosecutor for the Republic or a substitute named by him;
> - The Prefect [District Chief of National Police] or his Representative.
>
> This composition is set by Article 8 of the above-cited decree.  The fact
> that Madam Presiding Judge of the Higher Court pronounced judgment all
> by herself and by means of a court order therefore constitutes a flagrant
> illegality.
>
> 6. The condition allowing one to petition for legal aid is indigence.
> Indigence according to the above-cited decree can be proved by two
> written documents:  a certificate of non-taxation issued by the government
> revenue service attesting that you are not taxed because you have no
> income, and a certificate of indigence issued by the Mayor of your locality
> attesting that he knows you are an indigent.  Upon viewing these two
> documents the commission grants legal aid.
>
> 7.  MBI Group and Atlantic SCI would never have been eligible for legal
> aid because under no circumstances could these two companies be
> considered as being indigent persons to whom one could issue a certificate
> of indigence and a certificate of non-taxation.
>
> 8.  The court order rendered by Madam Presiding Judge of the Higher
> Court of Yaoundé rests on no legal basis, and as proof we find in this court
> order an evasive statement, "in view of the stipulations of the law,"
> without an indication of what law.  The reason for this is quite simple:
> there is no law empowering the Presiding Judge of the Higher Court to
> authorize placing a case on the court docket as a set fee or reducing the
> 5% required by law to have a case place on the court docket.

*Id.*, at ¶¶ 4-8.

As Mr. Nkana notes in his second declaration ("Second Nkana decl."), appended hereto as **PX H**, Article 19 sets out the applicable standards and requirements for "legal aid," as follows:

> (1.) Legal aid is granted to physical persons whose resources are insufficient to assert their rights to justice or to pursue the execution of all acts and enforcement procedures obtained without the benefit of such legal aid.
>
> (2.) Persons who may so benefit:
> (a.) The indigent, men under arms at any rank during the period of their service;
> (b.) Persons subject to the A rating of the standard tax;
> (c.) Persons subject to the minimum annual fiscal tax;
> (d.) Persons not concerned by paragraphs a., b., c. above when the fees to be covered cannot be borne by the resources initially believed to be sufficient;
> (e.) a wife who is the mother of a minor and in the process of a divorce, who does not have any personal income at her disposal.

Second Nkana decl., **PX H**, at ¶ 23. Barristers Emmanuel Tehge Hott and Marthe Massot Endalle, officers of the Cameroon Bar and with 60 years of cumulative experience concur. First, they explain that "the deposit comprises two types of fees: general fees also known as registry fees, and registration and stamp duty fees." Joint Declaration of Emmanuel Tehge Hott and Marthe Massot Endalle ("Hott-Endalle decl."), **PX I**, at ¶ 20. As attorneys Hott and Endalle further explain:

> 21.    Therefore, the provisions of Section 24 of the "Code de Procedure Civile" (Civil Procedure Code) clearly prescribed that even if a physical person or corporate body governed by private law or public law is exempted from payment of registration and stamp duty fees, the Registrar may always require him to pay registry fees for the matter he intends to file before the court to be enrolled on the cause-list....
>
> 25.    ...a corporate body governed by private law that claims to be the creditor of corporate body governed by public law or the State cannot avoid payment of the deposit....

26.  Such body governed by private law cannot escape prior payment for it does not enjoy the privilege of registration in debit or registration free of charge respectively provided for in Sections 336 and 337 of the General Tax Code.

27.  The prior payment of deposit by such claimant set out in Section 24 of the *"Code de Procedure Civile et Commerciale"* (Civil and Commercial Procedure Code) is further provided fore in Section 304 of the General Tax Code as follows: "The fees for instruments and transfers shall be paid before registration at the rates and subject to the amounts laid down in this Code. No person may reduce or defer payment."

Cameroon attorney Marcel S. Eyidi-Ngomba, who represented Roger Tchoufa

("Mr. Tchoufa") and his wife Mrs.Felicite Ngongo Djomo Tchoufa ("Mrs. Tchoufa")

concurs that "(t)he only situation where this provision requiring the compulsory payment

of a sufficient amount of money can be made flexible is when it applies to the destitute."

Declaration of Marcel S. Eyidi-Ngomba, **PX J**, at ¶ 7. He adds that:

It is unbelievable for the president of the High Court who has no power to deliver an interlocutory ruling *par excellence* (his powers are limited to the delivery of orders on divorce cases and injunction to pay, and issues concerning companies in difficulties) to take upon himself to order a court Registrar to enter a procedure on the cause list in violation of the provisions of Section 24.... *Id.*, at ¶18.

As noted above, defendants do not provide English translations of the order upon

which they rely.  Instead, defendants ask the court to adopt a declaration which asserts a

fee deferral procedure for which no statute, law or regulation is identified, Muna decl., at

¶ 8, and  implying -- but carefully avoiding stating -- that the court issued an order

incorporating that procedure.  *See* and *compare* Muna decl., at ¶¶ 8, 12 (describing,

respectively, the "procedure" and defendants' motion) with Muna decl., at ¶13

(describing the order).

Defendants compound their obfuscation of the Cameroon litigation events and

applicable laws and procedures by their silence on issues of transparent significance: the

6

authority of a court to issue the order which defendants imply was issued; the procedures for "deferral," and the terms for such deferral; the standards applicable to any request for a deferral; and the availability of the deferral to private corporations under any circumstances.

As the declarations of Cameroon attorneys Monthe, Mben, Eyide, Hotte, Endalle and Nkana establish, the judge who issued the order upon which defendants rely lacked any authority to defer or waive fees; the applicable statutes and regulations limit any deferral or waiver to cases of indigency; and, private corporations such as plaintiffs are never entitled to deferral or waiver.

Plaintiffs cannot and should not be expected to seek the advantage of an order that is "flagrantly illegal," Mben decl., **PX G**, at ¶ 3, and designed to "hide some duplicity." Hott/ Endalle decl., **PX I**, at ¶ 32. First, Cameroon appellate law makes clear that the "registration" of the case will not withstand any review. As Mr. Nkana explains, in *Nyeck v. Societe' Generale des Banques of Cameroon*, the Cameroon Court of Appeals remanded a case to the trial court for payment of fees which the trial court had overruled. Second Nkana decl, at ¶¶ 10-20. Fifteen years later, the *Nyeck* plaintiff continues to seek relief. *Id.*, at ¶ 19. Under *Nyeck*, no claim can be pursued, and no judgment enforced, on the basis of an incorrect modification by the judge of the filing fee requirements.

As defendants are well aware, no judgment can be pursued on the basis of the "order" in issue – whatever it actually says. But there is more to plaintiffs' resistance to defendants' offer to conspire in the circumvention of Cameroon's procedural or jurisdictional law than a pragmatic recognition of the ultimate futility of defendants' device.

7

Defendants improperly used their power and influence over the Cameroon court to extract an order cynically designed to do no more than escape the consideration by an American court of claims brought by an American and a Cameroon company. Defendants know that the only light of day this case will ever see will come in this court. If the case can only be heard in the Cameroon, defendants' illegal order will be merely the first in an unrelenting future of obstruction and neglect by a helpless and subordinate judiciary.

Even if, therefore, defendants had presented to this court some meaningful, clear and reliable evidence that plaintiffs' case can proceed to judgment without the payment of the filing fee – and they did not – the ease with which defendants obtained its illegal order evinces far more broadly and dispositively the utter unavailability of the Cameroon courts as a forum for fair disposition of plaintiffs' claims against the court's government.

## II.    The Interest of the United States In Fighting the Corruption Alleged In This Case Exceeds the Interest of the Cameroon

Grudgingly conceding that "combating corruption is a significant international policy," Defendants' Opposition, at 9, defendants respond to plaintiffs' contention that "the interest of the United States in fighting the corruption alleged in this case exceeds the interest of the Cameroon," Plaintiffs' Motion, at 4-7, by overstating plaintiffs' position,[7] and by attempting to distinguish the opinions in *In Re Grand Jury Subpoena*

---

[7] Plaintiffs have never contended that "U.S. courts are the preferred venue for all proceedings involving alleged corruption anywhere in the world." Defendants' Opposition, at 9. Plaintiffs contend that U.S. courts are far more suited and far more likely than Cameroon courts to fairly address allegations of demands made by Cameroon officials of American companies seeking to do business in Cameroon with the assistance of American government agencies.

8

Dated August 9, 2000 218 F.Supp.2d 544, 562 (S.D.N.Y.2002) and *Republic of Philippines v. Pimentel* 128 S.Ct. 2180 (2008).[8] Those distinctions fail.

In *In Re Grand Jury Subpoena, supra,* the district court wrote that "(a) grand jury in this district is investigating allegations that a New York corporation bribed senior officials in a foreign country to help American companies secure the rights to the vast natural resources of that country. At 547. Emphasizing that "the United States has a strong national interest in combating international bribery," at 562, the district court rejected the objections of both the foreign state and the corporation to certain subpoenas seeking sensitive information.

That national interest does not differ solely because, as in this case, the Americans resisted the bribery demand, rather than paid the bribe. The consequences are the same: corruption flourishes wherever courts – civil or criminal -- and their civil societies lack the resources or the ability to challenge it. Unlike American courts, Cameroon's courts have shown neither the ability nor the will to confront the highest authorities of their government with corruption charges.

In *Pimentel, supra,* the Supreme Court most assuredly did not acknowledge any "deference accorded to foreign courts in dealing with cases arising from alleged corruption in their countries." Defendants' Opposition, at 9. As the Supreme Court explained the procedural posture of the case:

> A class action by and for human rights victims (Pimentel class) of Ferdinand Marcos, while he was President of the Republic of the Philippines (Republic), led to a nearly $2 billion judgment in a United

---

[8] Defendants are entirely silent on the March 17, 2008 statement of the United States government's Millennium Challenge Corporation ("MCC"), confirming its interest in the allegations of the Complaint, *see* Plaintiffs' Motion, at 6, n.6, and accompanying text, and on the significant role which was to be played in the project by The United States' Overseas Private Investment Corporation ("OPIC"). *Id.*, at n.6. Defendants should, therefore, be deemed to have conceded those contentions. *Buggs v. Powell*, 293 F.Supp.2d 135, 141 (D.D.C.2003).

States District Court. The Pimentel class then sought to attach the assets of Arelma, S.A. (Arelma), a company incorporated by Marcos, held by a New York broker (Merrill Lynch). The Republic and a Philippine commission (Commission) established to recover property wrongfully taken by Marcos are also attempting to recover this and other Marcos property. The Philippine National Banc (PNB) holds some of the disputed assets in escrow, awaiting the outcome of pending litigation in the Sandiganbayan, a Philippine court determining whether Marcos' property should be forfeited to the Republic. Facing claims from various Marcos creditors, including the Pimentel class, Merrill Lynch filed this interpleader action under 28 U.S.C. § 1335, naming, among the defendants, the Republic, the Commission, Arelma, PNB (all petitioners here), and the Pimentel class (respondents here). The Republic and the Commission asserted sovereign immunity under the Foreign Sovereign Immunities Act of 1976, and moved to dismiss pursuant to Federal Rule of Civil Procedure 19(b), arguing that the action could not proceed without them. Arelma and PNB also sought a Rule 19(b) dismissal.

The question before the Supreme Court was:

We begin with the question we asked the parties to address when we granted certiorari: Whether the Republic and the Commission, having been dismissed from the interpleader action based on their successful assertion of sovereign immunity, had the right to appeal the District Court's determination under Rule 19 that the action could proceed in their absence. At 2187.

Relief was granted on behalf of the sovereign because it had a legitimate and undisputed claim to sovereign immunity. As the Court noted, "(e)xceptions to the general principle of foreign sovereign immunity are contained in §§ 1605-1607 of the (Foreign Sovereign Immunities Act). They are inapplicable here, or at least the parties do not invoke them. Immunity in this case, then, is uncontested." At 2190.[9]

Defendants' paraphrased and ellipsized description of the Court's holding, *see* Defendants' Motion, at 9, discussing the Court's holding at p. 1292, , thus ignores

---

[9] By contrast, there can be no serious contention that the commercial activities exception does not apply to this case. See Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint, Docket # 13, at 23-33.

entirely the Court's focus on honoring generally the comity concerns attendant to

unchallenged claims of sovereign immunity. As the Court wrote:

> Furthermore, combating public corruption is a significant international policy. The policy is manifested in treaties providing for international cooperation in recovering forfeited assets....This policy does support the interest of the Pimentel class in recovering damages awarded to it. But it also underscores the important comity concerns implicated by the Republic and the Commission in asserting foreign sovereign immunity. At 2192.

Any arguable "deference" in that case was undoubtedly the result of the pendency

of litigation by the successor agencies tasked with rooting out the corruption of the

preceding administration and locating the assets looted by that administration. At 2190.

Cameroon's attempt in this case to take control of a corruption claim directed at it and its

current high officials is starkly at odds with the legitimate and honest efforts undertaken

by the sovereign in *Pimentel*.

**III.  The Recent Conviction and Sentencing of Mr. Tchoufa and His Wife In Absentia to Decades of Imprisonment and Hard Labor On Trumped Up Charges In Retaliation for the American Litigation Mandates Grant of Plaintiffs' Motion**

On July 11, 2008, seven days before defendants wrote in their opposition that "the

corruption charges against Roger Tchoufa do not disqualify Cameroon as a forum,"

Defendants' Opposition, at 9, Mr. Tchoufa and his wife were convicted *in absentia* and

by "default" of misappropriation of public funds. Second Tchoufa decl., **PX E,** and *see*

Conviction, excerpts of which are appended hereto as **PX K**. Mr. Tchoufa was sentenced

to 45 years of hard labor, and Mrs. Tchoufa was sentenced to thirty years of hard labor.

*Id.*

Neither Mr. Tchoufa nor his wife appeared in the case. *Id.* Their attempts to

provide evidence through counsel were rejected by the court. *Id.* The court's "ruling"

11

nonetheless stated that Mr. Tchoufa's "failure to appear in court denotes that he does not have valuable arguments against the charge levied against him." **PX K**.[10] The court's "ruling" stated again that Mrs. Tchoufa's " failure to appear in court denotes that she does not have valuable arguments against the charge levied against her." *Id.*

The blatantly groundless charges against Mr. Tchoufa need not be addressed again here. It is self-evident from defendants' own filings and their American counsel's half-hearted explanations of the criminal proceedings, including the failed attempt to snatch Mr. Tchoufa in the Ivory Coast, *see* Plaintiffs' Opposition to Motion to Dismiss, at 39, that no one actually believes that there is any merit to the criminal charges against Mr. Tchoufa. Nonetheless, this latest paradigm of Cameroon judicial acquiescence to the demands of its government – in particular its arrogantly-retaliatory conviction and sentencing of Mrs. Tchoufa – sheds new light on plaintiffs' insistence that the Cameroon judiciary is ill-suited to fair resolution of plaintiffs' claims of high level government corruption.

Mrs. Tchoufa is a mother of three children, and is an illustrious Cameroonian lawyer. Declaration of Felicite Tchoufa, ("Felicite Tchoufa decl."), **PX L**. She was neither an officer, nor an employee, of any of the companies in issue in the case. Her sole connection to the events in issue is the use of one of her Cameroon companies as an intermediary to transmit monies owed by Atlantic to MBI in Maryland, none of which was retained by her companies. Second Tchoufa decl., **PX E**, at ¶9. Her companies were

---

[10] Defendants claim that Mr. Tchoufa was prosecuted because "among other things, ...Mr. Tchoufa permitted a corporation owned by Mr. (Joseph) Edou's brother-in-law ... to acquire for a token payment ... a 45% interest in ... the corporation ... that was seeking contracts from Mr. Edou...." Defendants' Opposition, at 9, n. 4. But that claim was debunked in its entirety, and without any challenge or Reply, in Plaintiffs' Opposition to Defendants' Motion to Dismiss Complaint, at 10, n.6. Defendants prudently eschew discussion of the "other things," because they include the absurdity of claiming that South African construction company Group Five, with annual revenues of $500,000,000.00, was a sham or fictive company used by Mr. Tchoufa as a front, *id*. at 24, n.13, and equally preposterous charges.

used solely because they held licenses which allowed the transfers in conformity with Cameroon's currency export regulations. *Id* at ¶¶ 8, 9..

Despite all of the business records and banking records to the contrary, Cameroon charged her with diverting some of the Atlantic monies for the purchase of a property in Cameroon. *See* December 2006 Order, excerpts of which are appended hereto as **PX M**. Aside from the dispositive fact that neither Mrs. Tchoufa nor her companies retained any of the monies, the records clearly show that the property itself was purchased, and almost entirely paid for, in the year prior to the time that any monies were received from Cameroon or CFC. The monies for the purchase, made on an installment basis and thus not completed until a year later, indisputably came from Mrs. Tchoufa's own business. Felicite Tchoufa decl, **PX L**, at ¶ 11.

This court must consider the effect of directing plaintiffs to the very judiciary which, one month ago, sentenced Mr. Tchoufa's *wife* to thirty years of hard labor on charges even more preposterous than the phony claims leveled against Mr. Tchoufa. Plaintiffs are not urging on the court generalized allegations of corruption, *see* June 10, 2008 Memorandum Opinion, at 14-16, nor are plaintiffs relying solely on the actions of Cameroon's executive branch, *id.*, at 16.

Instead, plaintiffs offer the judicary's own transparently corrupt and brazen willingness to do the bidding of the Cameroon, sentencing without a blink or a shudder a well-respected and patently-innocent woman to decades of hard labor because her husband has accused Cameroon's highest officials of corruption. Given an opportunity to prove its independence and its lack of prejudice – and thus its ability to serve as a viable alternative forum to the US court chosen by plaintiffs -- the Cameroon judiciary failed.

Its egregious and callous ruling forecloses any claim that it can fairly hear plaintiffs'

case.

Respectfully Submitted,

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*:    (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:    (240) 632-0906
*Email*: srolinski@rolinski.com

## CERTIFICATE OF SERVICE

I hereby certify that this 15th day of August, 2008, a copy of the foregoing was served electronically via ECF on:

Knox Bemis
*Hunton & Williams LLP*
1900 K Street, NW
Washington, D.C. 20006-1109

Philip M. Musolino

JUL 3, 2008

COURT OF APPEALS CENTER        REPUBLIC OF CAMEROON
-------------                  ----------------
HIGH COURT
OF MFOUNDI                     Mrs. CHIEF CLERK
-------------                  OF THE HIGH COURT OF MFOUNDI-YDE
No. 320/ GTGI/YDE

Ref: Your subpoena to the hearing of
July 9, 2008
                               Attn: Mr. Managing Director
Re: Letter of Formal Notice for Payment     of MBI Group and Atlantic Group

                               c/o Office of Maître NKANA, Jules, Attorney at Law, member of

                               the  Cameroonian Bar, BP. 7001- <u>YAOUNDE</u>


Dear Mr. Managing Director,

You are hereby informed that in order to schedule your case at the indicated date, you are
requested to pay the amount of: 10, 250, 000,000 (TEN BILLION TWO HUNDRED
AND FIFTY MILLIONS) to the Clerk of the High Court of Mfoundi in Yaoundé before
July 9 2008, in accordance to paragraph 24 of the Civil and Commercial code of
Procedure.

Respectfully yours,

The Clerk of the Court



( Stamp )                          *Signature*

                                   FANTA TIKELA Elisabeth
                                   Chief Clerk




I, the undersigned Soninka A. Dupeyron attest that I am a Certified Court Interpreter and Translator in the state of Maryland
and the Consortium of 41 States. I certify that I am fluent in both the French and English languages and that this document is
a true and complete translation from the French to the English language.   Tel: 202 246 2716/ 240 477 8217


                        Date: 07/04/2008

Soninka A. Dupeyron



COUR D'APPEL DU CENTRE

TRIBUNAL DE GRANDE
INSTANCE DU MFOUNDI
-----------

N° 320 GTGI/YDE

**Réf**: Votre assignation pour
l'audience du 09 Juillet 2008.

**Objet**: Mise en demeure pour
consignation.

RÉPUBLIQUE DU CAMEROUN
Paix – Travail – Patrie
---------

MADAME LE GREFFIER EN CHEF
DU TRIBUNAL DE GRANDE
INSTANCE DU MFOUNDI-YDE
A

Monsieur le Directeur Général

de MBI GROUP INC. et ATLANTIC

GROUP  S/C  Etude de Maître

NKANA Jules, Avocat au Barreau

du Cameroun B.P.7001 -YAOUNDE-

Monsieur le Directeur Général,

J'ai l'honneur de vous informer que pour
pouvoir enrôler votre affaire à la date indiquée vous êtes in-
vité à verser entre les mains du greffier en chef du Tribunal
de Grande Instance du Mfoundi à Yaoundé la somme de 10.250.000.000
(DIX MILLIARDS DEUX CENT CINQUANTE MILLIONS) et ce avant le 09
Juillet 2008 conformément à l'article 24 du code de procédure
civile et commerciale.

Veuillez recevoir Monsieur le Directeur
Général, l'expression de mon profond respect.

Le Greffier en Chef,

LANTA TIKELA Elisabeth

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MBI Group, Inc.**<br>**7200 Wisconsin Avenue, Suite 702**<br>**Bethesda, Maryland 20814** : | |
| **And** : | |
| **Atlantic Group, SCI**<br>**7200 Wisconsin Avenue, Suite 702**<br>**Bethesda, MD 20814**<br>**And**<br>**40 Rue Gullien**<br>**Douala, Cameroon**<br>       **Plaintiffs** : | **Case No: 1:07-cv-00637-JDB** |
| **vs.** : | |
| **Crédit Foncier du Cameroun**<br>**Boulevard du 20 Mai**<br>**Yaoundé, Cameroon** : | |
| **And** : | |
| **The Government of**<br>**The Republic of Cameroon**<br>**Yaoundé, Cameroon**<br>       **Defendants** : | |

## DECLARATION OF ROGER TCHOUFA

I, Roger Tchoufa, being duly sworn under oath and under the penalty of perjury under the laws of the United States of America, do hereby declare, swear and affirm that the statements in this declaration are true and accurate and are based on my personal knowledge.



EXHIBIT
E

1. I am the Senior Vice President of MBI Group, Inc. and the Managing Director of its Cameroonian affiliate, Atlantic Group, SCI. I currently reside in Bethesda, Maryland.

2. On July 10, 2008 a Cameroonian court issued a certificate removing the MBI and Atlantic case against Crédit Foncier du Cameroun ("CFC") and the Government of Cameroon from the court docket. A true and accurate copy of that document is attached hereto as Exhibit D.

3. On July 11, 2008, my wife, Felicité Djomo Tchoufa, and I were convicted, *in absentia* and by "default", of misappropriating public funds by the Government of Cameroon. I was sentenced to 45 years of prison with hard labor. My wife was sentenced to 30 years of prison with hard labor. Excerpts of a true copy and accurate copy of that conviction are attached hereto as Exhibit J. Excerpts of a true and accurate copy of the December 2006 order in that are attached hereto as Exhibit M.

4. My Cameroonian lawyer was prevented from representing me or my wife in the Cameroonian courts. His attempts to ensure that proper notification/service procedures were followed by the Government of Cameroon were also denied. The courts have refused to accept any documentary evidence to counter Cameroon's charges. Neither I nor my wife appeared in those cases.

5. Polyflex is a solvent, successful business engaged in the importation of mosquito nets. My wife and daughter are the sole shareholders of Polyflex. MASK is also a company owned by my wife.

6. The purchase of a building from Sam Wembe was not funded with the monies of defendants, as alleged by the Government of Cameroon. That property was purchased with the assets distributed from Polyflex to my wife. It was purchasesd a year before any monies were received from defendants. It was almost entirely paid for before CFC transferred money into Polyflex's accounts.

7. My wife was never an officer, director or shareholder of any of the companies involved in their litigation. Her only connection to any of the claims in their case was through Polyflex in order to simplify the transfer of payments or monies owed by Atlantic to MBI in Bethesda, MD.

8. Polyflex and MASK held a Cameroonian government issued license that permitted the companies to transfer money outside of the Cameroon.

9. Polyflex and MASK served only as intermediaries, transferring assets from Atlantic Group to MBI at their request and pursuant to an agreement between Atlantic Group and MBI. Neither Polyflex nor MASK retained any of those funds.

10. All of these facts are evident from the records taken by Cameroon including back records and real estate records.


Executed this 15th day of August 2008

Roger Tchoufa

## Patrice MONTHE

ANCIEX SECRETAIRE DE LA CONFERENCE DU
STAGE DU BARREAU DE BORDEAUX

ANCIEN BATONNIER DE 1/ORDRE DES AVOCATS
AU BARREAU DU CAMEROON

AVOCAT AU BARRF.AU

272, Rue Ernest BETOTE - AKWA

B P 5742 DOUALA - CAMEROUN

Tel: 343.26.64 /Fax: (237) 343.89.02

E-mail: pat TnoiUhe@yahoo.fr

C.C. NDIFORNGU
LIMA Richard
NGUEFACK Augustin
Avocats

# LEGAL OPINION

VosRef:
NosRef:
Affaire :

Objet     **DEPOSIT IN A CIVIL AND COMMERCIAL MATTER**

I am a Lawyer admitted to practice before the courts of Cameroon, including the High Court of Yaounde.

I am the managing partner of the law firm of MONTHE and Partners, and my office address is 272 Rue BETOTE AKWA DOUALA CAMEROON. P.O BOX 5742, **Email:** pat_monthe(o).vahoo.fi-. **Tel:** (237) 33 43 26 64, **Fax:** 33 43 89 02

I am also the former member of the France Bar Association in BORDEAUX.

T am the past president of the Cameroon Bar Association and one of the leading lawyers handling cases at the International Criminal Tribunal for Rwanda sitting in Arusha in Tanzania.

I am the former secretary of International Union of the Lawyers for the Central African region.

Deposit as required by the civil law jurisdiction in Cameroon represent that sum of money necessary to ensure cost incurred in the proceedings of a cause. This sum of money is paid into the registry of the court where the cause is pending by the plaintiff or the claimer.

To elucidate this fact, section VII of the civil and commercial procedure code, the 2nd edition of 2001, on deposit in the registry states in its article 24 inter alia that; with the exception of legal assistance, a claimer (plaintiff) is obliged to make a deposit before any court wherein he files an action, an amount sufficient to garanti payment of procedural cost, registration included. He shall complete the sum so necessary where in the cause of the procedure, the deposit is found insufficient.

**EXHIBIT**

F

Where such deposit become insufficient dues to a counter claim filed by the defendant, then the balance so required shall be paid by him.

In the absence of such payment where in the case of difficulties the amount shall be fixed by a court order delivered by the president of the jurisdiction seized, by simple application from the registrar, the cause shall be struck off for non deposit.

For further comprehension, section 1 on payment of dues before registration as stipulated by the Cameroon General Tax code in its article 304 states clearly that dues for deeds and that of mutations are paid before registration of same at rates and quotas fixed by the present code. Nobody can defer or attenuate such payment on pretext of contestation on the quota or for any reason whatsoever without being personally responsible except to be available for restitution if possible.

Section 11, On obligation of payment of the same code in its article 305, dispose inter alia that payment for registration of deeds are discharged by:

1- Notary publics for deeds brought at their competence,
2- By sheriff-Bailiffs and other agents empowered to establish process and reports, for those within their competence;
3- By the registrars for deeds and judgments sent and received at the registry with the exception of those provided in article 317 of the same code;

OBSERVATIONS: This write up is intended to justify that for all civil claims filed before a competent court in Cameroon, the law requires that a predeposit be paid before the cause is listed and determined on its merits.

The civil and commercial code as well as the Cameroon General Tax code in the various articles herein above referenced make clear this point and further elect offices and officers eligible to secure such deposit and or registration.

*Article 342* of the same code provides for average rate of proportional dues and its sub 9 indicates this for; Contradictory or default judgments in simple offences, misdemeanours or in felonies that has witnessed a sentence, classification or liquidation or obligation of amount

and material values and interest between individuals and more generally, all judgments or orders on declaratif motions on rights or properties.

The rate of amount to be paid as deposit is determined by Cameroon General Tax code. *Article 543* subs C of the said code provide 5% average rate to:

- Deeds and mutations of rural properties not developed.
- Deeds and mutations provided by article 342 of the present code, which include, rural rents, for commercial purposes and not comprising rural rents on habitation premises.

**CONCLUSIONS:** From the above premise, there are sufficient legal justifications to assert that a matter filed in a civil court in Cameroon cannot be deferred or entertained on its merits when the prerequisite deposit has not been paid to garanti incurred cost and registration.

Hope this answers the burning question relating to your matters in Cameroon and in the U.S.A.

**I Declare under the penalty of perjury under the laws of United States of America that the statements made in my Declaration are true and correct.**

Sincere regards

*DA TED A T DOUALA THIS 3th DA Y OF JUL Y 2008*

Patrice MONTHE
Formgr.President of the Bar

<u>Translation from French: Statement of Mr. Sylvestre MBEN, Esq.</u>                    Page 1

**MBEN – SONG – NTEP NYEK & Associates**
**Attorneys**
**P.O. Box 7853, Yaoundé**
**Tel.: 22 02 26 86      Fax: (237) 222 87 26**
**Email: scpmbensn @hotmail.com**

Sylvestre MBEN
Sébastien SONG
Séverin NTEP NYEK
Odile Yolande KEME
*Attorneys at the Bar of Cameroon*
Jean Paul NOO
Heles U GOUETH
John EBONA
*Associates*

To:    **United States District Court for**
       **The District of Columbia**

**Statement of Mr. Sylvestre MBEN**
**in the Matter of MBI Group**
**vs.**
**Crédit Foncier of Cameroon and the Government of the Republic of Cameroon**

1.    I have been an Attorney registered at the Bar of Cameroon since October 22, 1987. From 2002 to 2006, I was a member of the Council of the Order of Attorneys and a representative of the Bar in the Central, Southern and Eastern Provinces of Cameroon. I am a member of the International Association of Lawyers called "Lawyers Without Borders" where I took on the duties of Coordinator of Legal Chambers at Bujumbura in Burundi during the genocide trial in 2000. Likewise, from 2002 to 2006 I was in charge at Legal Chambers of coordinating the program for improving conditions of detention and human rights, called "PACDET" for short, a program born of a partnership between the government of the Republic of Cameroon and the European Union.

2.    From 1987 until today, I have continuously practiced the profession of Lawyer in every field of law including civil and commercial suits before the Higher Court of Yaoundé.

3.    In regards to Court Order no. 2 of July 15, 2008, rendered by Madam Presiding Judge of the Higher Court of Yaoundé at the request of the Government of Cameroon and the Crédit Foncier of Cameroon assisted by Mr. AKERE MUNA in the matter opposing them to the MBI Group and Atlantic S.C.I. -- said court order authorizing the summons filed by MBI Group and Atlantic SCI to be placed on the court docket is flagrantly illegal.



**EXHIBIT**

G

<u>Translation from French: Statement of Mr. Sylvestre MBEN, Esq.</u>    Page 2

4.    Firstly, there is reason to point out that Madam Presiding Judge of the Higher Court has no competence to render such a court order. Cameroonian law does indeed require any plaintiff in a civil or commercial suit to deposit with the Clerk of the Court 5% of the sum requested in the suit. If the sum of 5% required by law is not deposited, the matter cannot be placed on the court docket and consequently cannot be judged. That is why Mr. Jules NKANA, Esq., acting on behalf of MBI Group and Atlantic SCI after summoning the Crédit Foncier of Cameroon to appear at the Higher Court of Yaoundé, was given formal notice to deposit 5% of the amount requested in the suit and, subsequently, a certificate of removal from the court docket because the deposit was not made. The only possibility of not having to deposit 5% of the sum requested in the suit consists in petitioning the legal aid commission in conformity with Decree no. 76/521 dated November 9, 1976, bearing upon the organization of legal aid, and not Madam Presiding Judge of the Higher Court.

5.    In conformity with the above cited Decree no. 76/521 dated November 9, 1976, legal aid is provided by a commission constituted as follows:
    - The Presiding Judge of a Lower Court or a sitting magistrate;
    - The Prosecutor for the Republic or a substitute named by him;
    - The Prefect [District Chief of National Police] or his Representative.
This composition is set by Article 8 of the above-cited decree. The fact that Madam Presiding Judge of the Higher Court pronounced judgment all by herself and by means of a court order therefore constitutes a flagrant illegality.

6.    The condition allowing one to petition for legal aid is indigence. Indigence according to the above-cited decree can be proven by two written documents: a certificate of non-taxation issued by the government revenue service attesting that you are not taxed because you have no income, and a certificate of indigence issued by the Mayor of your locality attesting that he knows that you are an indigent. Upon viewing these two documents the commission grants legal aid.

7.    MBI Group and Atlantic SCI would never have been eligible for legal aid because under no circumstances could these two companies be considered as being indigent persons to whom one could issue a certificate of indigence and a certificate of non-taxation.

8.    The court order rendered by Madam Presiding Judge of the Higher Court of Yaoundé rests on no legal basis, and as proof we find in this court order an evasive statement, "in view of the stipulations of the law," without an indication of what law. The reason for this is quite simple: there is no law empowering the Presiding Judge of the Higher Court to authorize placing a case on the court docket at a set fee or reducing the 5% required by law to have a case placed on the court docket.

9.      Beyond the illegality raised above, it is quite simply curious to note that a party to a suit should seize the Court to have it render a measure favorable to its opponent in the suit by requesting that the latter be dispensed from payment of the 5% required by the law so as to pay only a set fee.  It was up to the MBI Group and Atlantic Group to petition the legal aid commission as demonstrated above in order to obtain a total or partial dispensation of the 5% required by law.  Such a procedure would never have gone far because the MBI Group and Atlantic SCI would never have been able to prove their indigence, it being further noted that legal aid is rarely granted to commercial companies.  In twenty years of professional practice, I have never yet seen such a court order and I challenge the Government of Cameroon and the Crédit Foncier of Cameroon to produce a single precedent of the sort.

10.     In sum, Court Order no. 2 dated July 15, 2008 rendered by Madam Presiding Judge of the Higher Court of Yaoundé essentially constitutes a strategy, for unacknowledged reasons, to snatch the suit opposing the MBI Group and Atlantic SCI against Crédit Foncier of Cameroon and the Government of Cameroon away from the competence of jurisdictions in the U.S.A.

11.     I am sending you, in the event it may prove useful, the text regulating legal aid, in particular Decree no. 76/521 dated November 9, 1976, relating to legal aid in Cameroon.

        I certify upon my honor that everything stated in the present declaration is true and I accept risking any sanction in the event that the contrary of what I have said would be proved.

                                        Done in Yaoundé on August 13, 2008
                                        [signed]
                                        Sylvester MBEN, Esq., Attorney

SCPA Messrs. MBEN, SONG,
NTEP NYEK & Associates
Attorneys
P.O. Box 7853 Yaoundé, Tel. 22 02 26 86

Translation certified by French Translations, Bethesda, MD, August 14, 2008

RALPH TARICA
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 1, 2009

# DECRET N° 76/521 DU 9 NOVEMBRE 1976
*Portant réglementation de l'assistance judiciaire*

## TITRE I
### DE L'ADMISSION AU BÉNÉFICE DE L'ASSISTANCE JUDICIAIRE

## CHAPITRE I
### Dispositions générales

**Article premier._** : L'assistance judiciaire est accordée soit de plein droit à raison de la nature du litige dans les cas prévus par la Loi, soit sur demande après instruction par les commissions spécialement instituées à cet effet et en raison de la situation pécuniaire de celui qui la sollicite, pour permettre à une personne physique, partie à un procès ou à un acte de juridiction gracieuse, d'obtenir le jugement ou l'acte sollicité, ou l'exécution de ceux-ci, avec dispense de l'avance de tout ou partie des frais qu'il devrait normalement supporter.

## CHAPITRE II
### Des commissions d'assistance judiciaire

**Art. 2._** : Les commissions d'assistance judiciaire sont instituées auprès des Tribunaux de Première Instance, des Tribunaux Militaires, des Cours d'Appel et de la Cour Suprême.

**Art. 3._** (1) La commission instituée auprès du Tribunal de Première Instance est compétente pour accorder l'assistance judiciaire en ce qui concerne les instances à porter ou en cours devant ledit tribunal et le Tribunal de Grande Instance et l'exécution des décisions émanant de ces juridictions.

(2) Lorsqu'il y a plus d'un Tribunal de Première Instance dans le ressort d'un département, la commission compétente pour connaître de la demande d'assistance judiciaire devant le Tribunal de Grande Instance est celle instituée auprès du Tribunal de Première Instance installé au chef-lieu du département.

**Art. 4._** : La commission instituée auprès du Tribunal Militaire est compétente pour accorder l'assistance judiciaire en ce qui concerne les instances à porter ou en cours devant ledit tribunal et pour l'exécution des décisions de cette juridiction.

192

**Art. 5._** : La commission instituée auprès de la Cour d'Appel est compétente pour accorder l'assistance judiciaire en ce qui concerne les instances à porter ou en cours devant cette Cour d'Appel et pour l'exécution des décisions de la même Cour.

**Art. 6._** : La commission instituée auprès de la Cour Suprême est compétente pour statuer sur les demandes d'assistance judiciaire concernant les pourvois formés devant cette juridiction, et pour les affaires pendantes devant la Chambre Administrative et l'Assemblée Plénière statuant en matière administrative.

**Art. 7._** : Les commissions d'assistance judiciaire sont placées sous le contrôle du Ministre de la Justice, Garde des Sceaux.

**Art. 8._** : (1) La commission instituée auprès du Tribunal de Première Instance comprend :
- le Président du Tribunal ou un Magistrat du siège, Président ;
- le Procureur de la République ou un Substitut désigné par lui ;
- le Préfet ou son représentant, et dans le cas ou le ressort du tribunal est celui d'un arrondissement, le Sous-préfet ou son représentant.

(2) En cas de partage de voix, celle du Président est prépondérante.

(3) Le Greffier en Chef du Tribunal de Première Instance assure le secrétariat de la commission.

**Art. 9._** (1) La commission instituée auprès du Tribunal Militaire comprend :
- le Président du Tribunal Militaire ou un Magistrat militaire, désigné par lui, Président ;
- le Commissaire du Gouvernement ou son représentant ;
- le Président du Tribunal de Première Instance du siège du Tribunal Militaire ou un Magistrat du siège désigné par lui.

(2) En cas de partage de voix, celle du Président est prépondérante.

(3) Le Greffier en Chef du Tribunal Militaire assure le secrétariat de la commission.

**Art. 10._** (1) La commission instituée auprès de la Cour d'Appel comprend :
- le Président de la Cour d'Appel ou son représentant, Président ;
- le Procureur Général près la Cour d'Appel ou un de ses Substituts;
- un Avocat éventuellement assisté d'un suppléant désigné pour une année judiciaire par le Bâtonnier ;    193

la désignation d'un Avocat pour participer aux travaux de la commission ne s'impose que si deux Avocats au moins ont leur étude au siège de la Cour;

– un représentant du Ministre des Finances désigné par le Gouverneur de la province;

– un Huissier éventuellement assisté d'un Huissier suppléant, désignés pour une année judiciaire par le Procureur Général près la Cour d'Appel.

(2) La commission ne peut valablement délibérer qu'en présence de trois de ses membres dont le Président de la Cour d'Appel et le Procureur Général.

(3) En cas de partage de voix, celle du Président est prépondérante.

(4) Le Greffier en Chef de la Cour d'Appel assure le secrétariat de la commission.

**Art. 11.** : (1) La commission d'assistance judiciaire instituée auprès de la Cour Suprême comprend :

– le Président de la Cour Suprême ou un conseiller désigné par lui, Président ;

– le Procureur Général près la Cour Suprême ou un de ses Substituts désigné par lui ;

– le Bâtonnier ou son représentant (un Avocat) résidant à Yaoundé et désigné par lui ;

– un représentant du Ministre des Finances ;

– un Huissier éventuellement assisté d'un Huissier suppléant désigné par le Procureur Général près la Cour Suprême pour une année judiciaire.

(2) La commission ne peut valablement délibérer qu'en présence d'au moins trois de ses membres dont le Président de la commission et le Procureur Général.

(3) En cas de partage de voix, celle du Président est prépondérante.

(4) Le Greffier en Chef de la Cour Suprême assure le secrétariat de la commission.

**Art. 12.** : (1) Les commissions prévues aux articles 3 à 11 ci-dessus sont convoquées par leur Président quatre jours au moins avant la date fixée pour la réunion.

(2) La convocation résulte d'un écrit laissant trace de sa remise.

**Art. 13.** : Lorsque le volume des demandes d'assistance judiciaire le justifie, toute commission peut, par décision du Ministre de la Justice prise sur l'avis conjoint des chefs de la juridiction auprès de laquelle co-

commission est établie, être divisée en plusieurs sous-commissions selon les diverses chambres de la juridiction.

**Art. 14.** : En cas d'urgence, l'admission provisoire au bénéfice de l'assistance judiciaire peut être décidée par le Président de la commission; la commission statue sans délai sur le maintien ou le refus de l'assistance demandée.

## CHAPITRE III
### Des demandes d'assistance judiciaire et de leur instruction

**Art. 15.** : (1) Toute personne qui sollicite l'assistance judiciaire s'adresse oralement ou par écrit, au secrétaire de la commission d'assistance judiciaire compétente.

Si la demande est orale, le secrétaire dresse procès-verbal de réception de la déclaration et des pièces jointes qui comprennent, le cas échéant, copies des décisions attaquées et il adresse le dossier ainsi constitué au Président de la commission d'assistance judiciaire.

(2) Le secrétaire de la commission informe le Parquet de l'introduction de toute demande d'assistance judiciaire.

**Art. 16.** : (1) Toute personne qui sollicite l'assistance judiciaire doit joindre à sa demande pour établir son état d'indigence, un extrait du rôle pour ses impositions ou un certificat de non-imposition ou encore un certificat du chef de la circonscription administrative précisant, le cas échéant, si elle est soumise à l'impôt minimum forfaitaire.

(2) La non-production des pièces mentionnées à l'alinéa précédent entraîne l'irrecevabilité de la demande trente jours après la notification d'une mise en demeure du secrétaire de la commission restée infructueuse.

(3) L'irrecevabilité est prononcée par ordonnance du Président de la commission après avis du Ministère Public.

(4) L'ordonnance peut être rapportée même d'office dans les mêmes formes et avant notification.

**Art. 17.** : (1) La commission prend toutes les informations nécessaires pour s'éclairer sur l'insuffisance des ressources du demandeur d'une part, et pour déterminer l'importance que revêt pour le demandeur l'exercice de ses droits, d'autre part.

(2) La partie adverse peut être convoquée pour fournir toutes explications de nature à contester l'insuffisance des ressources du demandeur.

Case 1:05-cv-04622-DLI Document 30 Filed 08/15/2016 Page 28 of 68

**Art. 22._** : (1) Sans préjudice des cas où les procédures judiciaires sont gratuites, l'assistance judiciaire est accordée de plein droit :

a) aux travailleurs victimes d'un accident du travail, pour les actions en indemnités qu'ils engagent contre l'employeur ;

b) à l'épouse sans emploi et sans ressource, abandonnée par son mari, aux fins d'obtenir du tribunal une pension alimentaire pour elle-même ou pour les enfants laissés à sa charge ;

c) au condamné à mort, demandeur au pourvoi, dont la défense n'a pas été assurée par un Avocat devant la ou les juridictions inférieures.

(2) La commission d'assistance judiciaire vérifie que les conditions d'assistance judiciaire de plein droit sont réunies avant d'en prononcer le bénéfice.

**Art. 23._** : (1) L'assistance judiciaire s'applique de plein droit aux procédures ou des actes d'exécution des décisions de justice obtenues avec son bénéfice.

(2) La commission peut déterminer la nature des procédures ou des actes d'exécution auxquels s'applique l'assistance judiciaire.

(3) Les dépositaires publics délivrent gratis aux bénéficiaires de l'assistance judiciaire les actes et expéditions nécessaires à la procédure ou aux mesures d'exécution.

(4) Dans le cas prévu à l'article 22 (1,a), l'assistance judiciaire s'étend aux litiges nés de l'exécution des jugements ou arrêts rendus en matière d'accident du travail.

A cet effet, le Président de la juridiction saisie désigne l'Avocat ou l'Huissier qui prête son ministère au travailleur et précise en ce qui concerne les procédures et les actes d'exécution ceux auxquels l'assistance judiciaire s'applique.

**Art. 24._** : (1) L'Avocat désigné d'office obtient le remboursement des frais qu'il a engagés pour la défense de l'assisté et reçoit, le cas échéant, les frais de voyage et d'hébergement et une indemnité d'audience de 5 000 francs par jour.

(2) Ces frais sont payés comme frais de justice criminelle.

**Art. 25._** : Le Président de la juridiction de jugement peut ordonner la citation des témoins qui lui sont indiqués par le bénéficiaire de l'assistance judiciaire, à l'audience de renvoi.

**Art. 18._** : La commission statue dans le plus bref délai sur les demandes d'assistance judiciaire dont elle est saisie. Ses décisions mentionnent que l'assistance est accordée ou refusée. Elles sont motivées.

**Art. 19._** : (1) L'assistance judiciaire est accordée aux personnes physiques dont les ressources sont insuffisantes pour faire valoir leurs droits en justice ou pour poursuivre l'exécution de tous actes et procédure d'exécution obtenus sans le bénéfice de cette assistance judiciaire.

(2) Peuvent en bénéficier :

a) les indigents, les hommes de rang de toutes armes pendant la durée de leur service ;

b) les personnes assujetties au tarif du taux A de l'impôt forfaitaire;

c) les personnes assujetties à l'impôt minimum fiscal par an ;

d) les personnes non concernées par les alinéas a, b et c ci-dessus lorsque les frais à exposer ne peuvent être supportés par leurs ressources initialement réputées suffisantes ;

e) l'épouse, mère d'enfant mineur, en instance de divorce qui ne dispose d'aucun revenu propre.

**Art. 20._** : (1) Dans les cinq jours du prononcé de la décision, le secrétaire de la commission en donne avis par voie administrative au demandeur.

(2) a) En cas d'admission au bénéfice de l'assistance judiciaire, un extrait de la décision est adressé dans le délai ci-dessus spécifié, au chef d'inspection de l'Enregistrement.

b) Le Président de la juridiction devant connaître de l'affaire désigne l'Avocat ou l'Huissier qui prête son ministère à l'assuré.

S'il s'agit de procédure ou d'acte d'exécution, les pièces sont transmises au Président du Tribunal de Première Instance du lieu où l'exécution doit se poursuivre, lequel désigne l'Huissier qui procède à ladite exécution.

**Art. 21._** : Les décisions des commissions d'assistance judiciaire ne sont susceptibles d'aucun recours de la part des parties.

Toutefois dans un délai de 10 jours, le Ministère Public et le Bâtonnier peuvent d'office déférer à la commission d'assistance judiciaire établie auprès de la Cour d'Appel toute décision rendue par les commissions instituées auprès des Tribunaux de Première Instance et Tribunaux Militaires pour être réformée s'il y a lieu.

**Art. 26.** : Le Ministère Public veille à l'exécution des mesures ordonnées en vertu des dispositions de l'article 25 ci-dessus.

## CHAPITRE V

### Des effets de l'assistance judiciaire

A – Des effets de l'assistance judiciaire quant aux instances

**Art. 27.** : (1) L'assistance judiciaire étend de plein droit aux actes et procédures d'exécution postérieurs à la décision sanctionnant l'instance pour laquelle elle a été accordée.

(2) L'assistance judiciaire peut en outre être accordée pour tous actes et procédures d'exécution poursuivis en vertu des décisions obtenues sans le bénéfice de cette assistance.

(3) Lorsqu'en cours d'instance un nouveau litige oppose l'assisté à la même partie ou à un tiers, le bénéfice de la précédente décision de la commission subsiste en ce qui concerne la constatation de l'insuffisance des ressources, mais l'octroi de l'assistance judiciaire doit être prononcé par la commission compétente pour cette nouvelle instance.

**Art. 28.** : Lorsque la juridiction saisie d'un litige pour lequel le bénéfice de l'assistance judiciaire a été accordé est incompétente, ce bénéfice subsiste devant la nouvelle juridiction appelée à connaître du litige, sans qu'il soit besoin d'une nouvelle admission.

**Art. 29.** : Sauf retrait dans les formes et conditions prévues aux articles 36 et suivants ci-dessous, l'assistance judiciaire accordée à propos d'une instance demeure acquise de plein droit devant toutes les juridictions saisies de ladite instance jusqu'à son règlement définitif.

B – Des effets de l'assistance judiciaire quant aux frais

**Art. 30.** : (1) L'assisté est dispensé du paiement total ou partiel des sommes dues au Trésor pour droit de timbre, d'enregistrement et de greffe, ainsi que de toute consignation, sauf de la taxe prévue en cas de pourvoi.

(2) Il est également dispensé du paiement total ou partiel des sommes dues aux Avocats, Greffiers, Huissiers, Notaires et Commissaires-priseurs pour droit, émoluments et honoraires.

(3) Les actes de procédure faits à la requête de l'assisté sont visés pout timbre et enregistrement en débet.

(4) Le visa pour timbre est donné sur l'original au moment de son enregistrement.

198

(5) Les actes et titres produits par l'assisté, pour justifier de ses droits et qualités sont également visés pour timbre et enregistrés en débet.

(6) Si ces actes et titres sont du nombre de ceux dont les lois ordonnent l'enregistrement dans un délai déterminé les droits d'enregistrement deviennent exigibles immédiatement après le jugement définitif ; il en est de même des sommes dues pour contravention aux lois sur le timbre.

(7) Si ces actes et titres ne sont pas du nombre de ceux dont les lois ordonnent l'enregistrement dans un délai déterminé, les droits d'enregistrement de ces actes sont assimilés à ceux des actes de procédure.

(8) Le visa pour timbre et l'enregistrement en débet doivent mentionner la date de la décision qui a accordé le bénéfice de l'assistance judiciaire ; ils n'ont d'effet, quant aux actes et titres produits par l'assisté, que pour le procès dans lequel la production a eu lieu.

(9) Les frais de transport des Huissiers et des Experts, les honoraires de ces derniers, les taxes des témoins dont l'audition a été autorisée par la juridiction ou le juge, et en général, tous les frais dus à des tiers et occasionnés par la procédure sont avancés par le Trésor public. Le paragraphe 6 du présent article s'applique au recouvrement de ces avances.

**Art. 31.** : Les Notaires, Greffiers et tous les autres dépositaires publics ne sont tenus à la délivrance gratuite des actes et expéditions réclamés par le demandeur en assistance ou par l'assisté que sur ordonnance du Président de la juridiction devant laquelle la cause est pendante.

**Art. 32.** : (1) En cas de condamnation aux dépens prononcée contre l'adversaire de l'assisté, la taxe comprend tous les droits, frais de toute nature, redevances du greffe et émoluments auxquels l'assisté aurait été tenu s'il n'avait pas bénéficié de l'assistance judiciaire.

(2) Si le bénéfice de l'assistance judiciaire succombe, les dépens sont mis à la charge du Trésor public.

**Art. 33.** : (1) Dans le cas prévu à l'alinéa 1 de l'article 32 ci-dessus, la condamnation est prononcée et les extraits de la décision de condamnation sont délivrés au nom de l'administration de l'enregistrement qui en poursuit le recouvrement, comme en matière d'enregistrement, sauf le droit pour l'assisté de concourir aux actes de poursuites, conjointement avec l'administration, lorsque cela est utile pour exécuter les décisions rendues.

199

(2) Les frais occasionnés par les procédures d'exécution et les instances relatives à cette exécution entre l'assisté et la partie poursuivie qui auraient été discontinuées ou suspendues pendant plus d'une année, sont réputés dus par la partie poursuivie.

Sauf justification ou décision contraire, l'état des frais est délivré conformément au paragraphe précédent.

(3) La créance du Trésor, pour avances qu'il a faites ainsi que pour tous droits de greffe, d'enregistrement et de timbre bénéficie du privilège du Trésor.

Art. 34. _ : Les greffiers sont tenus, dans les trois mois de la décision contenant liquidation des dépens ou de la taxe des frais par le juge, de transmettre au receveur de l'enregistrement l'extrait de la décision, sous peine de 1 000 francs d'amende pour chaque extrait non transmis dans ledit délai.

Art. 35._ : Tout jugement rendu avec le bénéfice de l'assistance judiciaire, tout acte fait et signifié avec ce bénéfice doit porter la mention de la date de la décision accordant l'assistance judiciaire.

## TITRE II
## DU RETRAIT DE L'ASSISTANCE JUDICIAIRE

Art. 36. _ : Le bénéfice de l'assistance judiciaire peut être retiré en tout état de cause :

1°._ s'il survient à l'assisté des ressources reconnues suffisantes ;

2°._ si l'assisté a influencé la décision de la commission par une déclaration frauduleuse.

Art. 37._ : Le retrait de l'assistance judiciaire peut être demandé soit par le Ministère Public, soit par la partie adverse. Il peut être aussi prononcé d'office par la commission qui a statué ou celle instituée auprès de la juridiction qui connaît de l'affaire.

Dans tous les cas, la décision de retrait doit être motivée et l'assisté doit être auparavant mis en demeure de fournir des explications, soit verbales, soit écrites.

La décision de retrait est notifiée dans les mêmes formes et aux mêmes autorités que la décision accordant le bénéfice de l'assistance judiciaire.

Art. 38._ : Le retrait de l'assistance judiciaire rend immédiatement exigibles les droits, émoluments et avances dont l'assisté avait été dispensé. Il est procédé au recouvrement des frais suivant état dressé par le Président de la juridiction et en vertu d'un extrait délivré au nom de l'administration de l'enregistrement par le greffier.

Art. 39. _ : L'action tendant au recouvrement contre la partie adverse se prescrit conformément au droit commun.

Art. 40. _ : Si le retrait de l'assistance judiciaire a pour cause une déclaration frauduleuse de l'assisté, relative à son indigence, le dossier est transmis au parquet compétent sans préjudice des dispositions de l'article 39 ci-dessus.

## TITRE III
## DISPOSITIONS DIVERSES

Art. 41._ : Les auditeurs de justice peuvent être désignés pour assurer la défense des intérêts d'une partie bénéficiaire de l'assistance judiciaire.

Art. 42._ : Le présent décret est applicable aux demandes d'assistance judiciaire en instance à sa date d'entrée en vigueur.

Toutefois, sont expressément validées sauf en matière de condamnation à mort, les décisions des commissions d'assistance judiciaire instituées auprès de la Cour Suprême et des Cours d'Appel qui, déjà intervenues à la date visée à l'alinéa ci-dessus ne maintiennent pas le bénéfice de l'assistance judiciaire antérieurement accordée.

Art. 43._ : (1) Les demandes d'assistance judiciaire en instance lors de l'entrée en vigueur du présent décret sont transmises en l'état aux présidents des commissions compétentes.

(2) Valent plein droit admission définitive à l'assistance judiciaire, les admissions provisoires prononcées par les commissions de première instance ou de Cour d'Appel et qui à la date de publication du présent décret n'auraient pas encore fait l'objet d'une admission définitive par les commissions instituées auprès des juridictions devant connaître de l'affaire pour laquelle l'assistance judiciaire est demandée.

Art. 44._ : Sont abrogées toutes dispositions antérieures à celles du présent décret, et notamment celles des :

a) décret N° 60/224 du 5 décembre 1960 sur l'assistance judiciaire ;

b) décret N° 64/DF/155 du 5 mai 1964 modifiant le régime de l'assistance judiciaire ;

# II

# Autres textes
# de
# procédure

c) décret N° 65/DF/93 du 2 avril 1965 portant réforme de l'assistance judiciaire au Cameroun Oriental ;

d) Section 352 of the Criminal Procedure Ordinance.

Art. 45. — : Le présent décret sera publié selon la procédure d'urgence, puis inséré au *Journal Officiel* de la République Unie du Cameroun en Français et en Anglais.

## DECLARATION OF MR. J. JULES NKANA, ESQ.,

Attorney registered at the Bar of Cameroon admitted to plead before all jurisdictions of Cameroon including the Higher Court of Mfoundi at Yaoundé, P. O. Box 7001, Yaoundé, Tel: 22 23 42 65; 99 53 76 75;

1.    In reference to the summons of June 29, 2008 by the MBI Group, Inc. Company and Atlantic Group, SCI. Company, inviting the defendants to present themselves at the hearing of July 9, 2008;

2.    The Chief Clerk of the Higher Court of Mfoundi, at our request and in view of the large size of the sums involved, wrote a letter dated July 3, 2008 enjoining the responsible parties of said Companies acting as plaintiffs in this suit to deposit -- before July 9, 2008, in conformity with Article 24 of the Code of Civil and Commercial Procedures -- the sum of 10,250,000.00 FCFA (ten billion two hundred fifty million CFA Francs) in order to register the matter for the indicated date;

3.    This deposit (sum) not having been paid, the summons could not be filed with the Office of the Clerk of the Court. The Clerk of the Court could not register the matter for that date and the matter was not called;

4.    On July 10, 2008, the Clerk of the Court certified that the matter had not been placed on the court docket. This means that the matter is non-existent in its list of cases;

5.    Strangely, whereas they are the defendants in the procedure, the Government of Cameroon and the Crédit Foncier of Cameroon, through the intermediary of their lawyer, seized the Presiding Judge of the Higher Court of Mfoundi at Yaoundé to request that the summons of the MBI Group, Inc., and the Atlantic Group, SCI, be placed on the court docket;

6.    By means of Order no. 8 of July 15, 2008, the Presiding Judge enjoined the Clerk of the Court to place the matter by fixed law on the court docket for the hearing to be held on July 23, 2008;

7.    Note must be taken that the procedure for seizing civil jurisdictions in this manner was violated; a defendant may not have the summons of a plaintiff placed on the court docket;

8.    If this procedure is accepted, it would be an absolute first since it is not a judge's role to place a matter on the docket. Placing cases on the docket is a matter for the Chief Clerk of the Court, and when all the formalities required by law have been completed – notably the payment of the deposit set by law (Art. 24 CPC) and requested by the Clerk of the Court – the case is then passed on to the judge;

9.    Whenever the deposit required by the Clerk of the Court is insufficient to cover the recording fees, the plaintiff is required to make up the difference;



EXHIBIT

4

10. In the matter of David François NYECK vs. the Société Générale des Banques of Cameroon, Article 24 of the Code of Procedures figures centrally in the debates and expresses the manner by which the Court resolved the problem;

11.    Indeed, at the time the summons was served on February 8, 1989, the plaintiff, Mr. David François NYECK, had not calculated the amount of the damages, leaving the matter to be developed by prior valuation;

12.    The Office of the Clerk of the Court had set a flat-fee deposit of 5,000,000.00 FCFA (five million), which he paid;

13.    In the course of the trial, the sum requested of Mr. Nyeck was raised to one billion; the SGBC (the defendant) raised the issue of the violation of Article 24 of the Civil Procedure Code and demanded that the remaining portion of the deposit be paid;

14.    The judge overruled this and sentenced the SGBC to pay 610,000,000 FCFA (six hundred ten million) in damages for harm that been suffered;

15.    The SGBC appealed the ruling and, by court order no. 182/Civ/ADD dated April 7, 1993, the judges of the Court of Appeals rendered a Non-Final Judgment ordering that the case be sent back to the Clerk of the Court for completion of registration;

16.    In explaining their reasoning the body of judges stated that Article 24 had been violated in view of the fact:

    -That the judgment submitted for sanctioning by the court of appeals had been incompletely recorded, the beneficiary having paid only a very small portion of the fees due.

    -That in the terms of Articles 92 and 95 of the code for recording, judges will be held personally responsible if they render judgments based on written evidence that has not been recorded.

    -That the partial or reduced payment of fees must be taken into account in the event the matter has not been recorded;

    -That Article 103 of said code further stipulates that courts before which non-recorded matters appear must, either by requirement of the Public Ministry or even as a matter of course, order that these matters be filed at the office of the clerk of the court to be officially acted upon immediately.

17.    Inasmuch as, in any case, it is judicious to recall that, according to Article 24 of the Code of Civil and Commercial Procedures, it is for the Clerk of the Court and not for the parties (plaintiff, defendant, judge) to evaluate the sum of the deposit; this matter belongs exclusively to the Clerk of the Court;

18.    The case having been sent back to the office of the Clerk of the Court of Appeals by the above-cited order, as long as Mr. David François Nyeck had not fulfilled this requirement by making up for the missing deposit sum of 30,000,000 FCFA (thirty million), he had no hope of seeing his case move forward.

19.    Not having this sum at his disposal, fifteen (15) years later Mr. Nyeck, on August 17, 2006, obtained legal aid dispensing him from the need to pay the 30,000,000 FCFA required to pay off his deposit and complete the recording of the judgment under attack.

20.    The central court of appeals, taking note of the legal aid granted to Mr. Nyeck by the commission by virtue of Ordinance no. 22/AJ dated 8 / 17 / 2007, allowed the recording of the matter and found against the SGBC by Order 427/civ rendered on July 4, 2007. The matter is pending before the Supreme Court by petition for review from the SGBC.

21.    What constitutes legal aid? Created by Decree no. 76/521 of November 9, 1976, **it is granted either outright because of the nature of the suit in cases foreseen by the law or upon request following review by commissions specially set up for that purpose and because of the monetary situation of the person who requests it, in order to allow a physical person who is a party to a suit or to a matter of juridical grace to obtain the sought-after judgment or act, or the execution of such, dispensing him beforehand of all or a portion of the expenses that he would normally have to bear.**

22.    It must be noted that this law only concerns physical persons; legal entities are excluded from its field of application.

23.    Article 19 of the above-stated law specifies those who may benefit from legal aid:
    **(1.) Legal aid is granted to physical persons whose resources are insufficient to assert their rights to justice or to pursue the execution of all acts and enforcement procedures obtained without the benefit of such legal aid.**
    **(2.) Persons who may so benefit:**
        **(a.) The indigent, men under arms at any rank during the period of their service;**
        **(b.) Persons subject to the A rating of the standard tax;**
        **(c.) Persons subject to the minimum annual fiscal tax;**
        **(d.) Persons not concerned by paragraphs a., b., c. above when the fees to be covered cannot be borne by the resources initially believed to be sufficient;**
        **(e.) a wife who is the mother of a minor and in the process of a divorce, who does not have any personal income at her disposal.**

24.    MBI Group, Inc. and Atlantic Group, SCI, legal entities, may not benefit from the stipulations of this law. It is unthinkable that a request be initiated in their name by their adversaries – the Government of Cameroon and the Crédit Foncier of Cameroon.

Translation from French: Declaration of Mr. Nkana                    Page 4

25.     Furthermore, it must be specified that once the plaintiffs – MBI Group, Inc. and Atlantic Group, SCI – have paid off the deposit required by Article 24 of the Code of Civil and Commercial Procedures, **the opposing side would apply the exception for deposits paid by foreigners (Deposit judicatum solvi)** which is laid down by Article 73 of the same code to guarantee the expenses and damages to which they may be sentenced.

26.     The amount of this deposit is set by the judge, acting sovereignly.

27.     The suit initiated by MBI Group, Inc., and Atlantic Group, SCI, is currently non-existent because the deposit has not been paid; this is confirmed by the certificate of removal from the court docket by the Chief Clerk of the Higher Court.  Furthermore, the deposit that allowed the defendants to place the plaintiffs' summons on the court docket is an original event and is aimed at misleading the American judge into believing in the existence of a suit which does not obey the rules of Cameroonian law.

                            Mr. J. Jules NKANA, Esq.
                            Attorney at the Bar of Cameroon

Translation certified by French Translations, Bethesda, MD, August 12, 2008

RALPH TARICA
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 1, 2009

In connection with my Declaration, which I have made pursuant to the US Federal Court case no. 1:07-cv-00637-JDB, I declare under the penalty of perjury under the laws of United States of America that the statements made in the declaration are true and correct.

## DECLARATION DE MAITRE NKANA J. JULES

Avocat inscrit au barreau du Cameroun admis à plaider devant toutes les juridictions camerounaises dont le Tribunal de Grande Instance du Mfoundi à Yaoundé B .P 7001 yaoundé Tél : 22 23 42 65 ; 99 53 76 75 ;

1- Suite à l'assignation du 29 juin 2008 des Sociétés MBI CROUP INC et ATLANTIC GROUP SCI invitaient les défendeurs à se présenter à l'audience du 9 juillet 2008 ;

2- Le Greffier en Chef du Tribunal de Grande Instance du Mfoundi à notre demande et vu l'importance des sommes a par lettre en date du 3 juillet 2008 écrit et enjoint aux responsables desdites Sociétés demanderesses dans la procédure d'avoir à consigner avant le 9 juillet 2008 conformément à l'article 24 du Code de Procédure Civile et Commerciale la somme de **10.250.000.000 FCFA** (dix milliards deux cent cinquante millions) pour pouvoir enrôler l'affaire à la date indiquée ;

3- Cette consignation (somme) n'ayant pas été versée, l'assignation n'a pu être placée au Greffe du Tribunal. Le Greffier n'a pu enrôler l'affaire à cette date et l'affaire n'a pas été appelée;

4- Le 10 juillet 2008, le Greffier certifiait le non enrôlement de l'affaire. Ce qui signifie que l'affaire est inexistante dans son rôle ;

5- Curieusement alors qu'ils sont défendeurs dans la procédure, l'Etat du Cameroun et le Crédit Foncier du Cameroun ont saisi par l'intermédiaire de leur avocat la Présidente du Tribunal de Grande Instance du Mfoundi à Yaoundé pour solliciter l'enrôlement de l'assignation de MBI GROUP INC et de ATLANTIC GROUP SCI ;

6- Par une ordonnance n° 08 du 15 juillet 2008, la Présidente enjoignait au Greffier en Chef du Tribunal d'enrôler l'affaire au droit fixe à l'audience du 23 juillet 2008 ;

7- Il convient de rappeler que la procédure de saisine des juridictions civiles par ce procédé a été violée ; le défendeur ne pouvant faire enrôler l'assignation du demandeur ;

8- Si ce procédé est accepté, ce serait une grande première car il n'appartient pas au juge d'enrôler une affaire. L'enrôlement est l'affaire du Greffier en chef et lorsque toutes les formalités exigées par la loi sont accomplies notamment le paiement de la consignation fixé par la loi (art 24 CPC) et exigé par le Greffier, le dossier est alors transmis au juge ;

9- Lorsque la consignation exigée par le Greffier est insuffisante pour couvrir les droits d'enregistrement, le demandeur est tenu de la compléter ;

10- Dans le cas de l'affaire NYECK David François contre la Société Générale des Banques du Cameroun l'article 24 du Code de Procédure est au centre des débats et expressive de la manière dont la cour a résolu le problème;

11- En effet, au moment d'introduire l'assignation le 8 février 1989, le demandeur Monsieur NYECK David François n'avait pas estimé le montant du préjudice subordonnant son évolution à une expertise préalable ;

12- Les services du Greffe lui avaient fixé forfaitairement une consignation de 5.000.000 FCFA (cinq millions) qu'il avait versé ;

13- Au cours du procès, la demande de Sieur NYECK David François a été chiffré à plus d'un milliard ; la SGBC (défenderesse) a soulevé la violation de l'article 24 du Code de Procédure Civile et exigé le complément de consignation ;

14- Le juge est passé outre et à condamné la SGBC à payer 610.000.000 FCFA (six cent dix millions) de dommages-intérêts pour préjudice subi ;

15- La SGBC a relevé appel et par un arrêt n°182/Civ/ADD du 7 avril 1993 les juges de la Cour d'Appel ont rendu une décision Avant Dire Droit ordonnant que le dossier soit remis au Greffe pour parfait enregistrement ;

16- Pour motiver leur décision le collège de juges a dit que l'article 24 a été violé en ce que

- *Considérant que le jugement soumis à la sanction de la cour d'appel a été imparfaitement enregistré, le bénéficiaire ne s'étant acquitté que d'une infime partie des droits dus.*

-*Considérant qu'aux termes des articles 92 et 95 du code de l'enregistrement, les juges seront tenus pour personnellement responsables s'ils statuent sur le vu des pièces non enregistrées.*

-*Considérant qu'il faut assimiler au défaut d'enregistrement le paiement partiel ou minoré des droits.*

-*considérant que l'article 103 dudit code dispose en outre que les tribunaux devant lesquels sont produits des actes non enregistrés doivent soit sur réquisitions du Ministère Public soit même d'office, ordonner le dépôt au greffe de ces actes pour être soumis immédiatement à la formalité*

17- Attendu qu'en tout état de cause, il est judicieux de rappeler selon l'article 24 du code de procédure civile et commerciale que c'est au Greffier et non aux parties (demandeur – défendeur – juge) d'évaluer le montant de la consignation ; c'est une affaire exclusive du Greffier ;

18- Le dossier étant rentré au greffe de la cour d'Appel par l'arrêt sus citée, tant que Monsieur NYECK David François n'avait pas accompli cette exigence par un complément de consignation de la somme de 30.000.000 FCFA (trente millions), il n'avait plus de chance de voir son dossier avancer.

19- Ne disposant pas de cette somme, quinze (15) ans plus tard, Monsieur NYECK David François a obtenu le 17 aout 2006 l'assistance judiciaire le dispensant de payer les 30.000.000 FCFA exigé pour compléter sa consignation et parfaire l'enregistrement du jugement attaqué.

20-La cour d'appel du centre prenant acte de l'assistance judiciaire accordée à Monsieur NYECK David François par la commission en vertu de l'ordonnance No

22/AJ du 17 /08 /2007 a admis l'enrôlement de l'affaire et condamné la SGBC par un arrêt 427/civ rendu le 04 juillet 2007. L'affaire est pendante devant la Cour Suprême sur pourvoi de la SGBC

21- En quoi consiste l'assistance judiciaire ? Créée par décret no 76/521 du 9 novembre 1976 , **elle est accordée soit de plein droit à raison de la nature du litige dans les cas prévu par la loi, soit sur demande après instruction par les commissions spécialement instituées à cet effet et en raison de la situation pécuniaire de celui qui la sollicite, pour permettre à une personne physique, partie au procès ou à un acte de juridiction gracieuse, d'obtenir le jugement ou l'acte sollicité, ou l'exécution de ceux-ci, avec dispense de l'avance de tout ou partie des frais qu'il devrait normalement supporter.**

22-Il faut noter que cette loi ne concerne que les personnes physiques ; les personnes morales sont exclues du champ de son application.

23-L'article 19 de la sus dite loi précise ceux qui peuvent bénéficier de l'assistance  judiciaire : **(1) l'assistance judiciaire est accordée aux personnes physiques dont les ressources sont insuffisantes pour faire valoir leurs droits en justice ou pour poursuivre l'exécution de tous actes et procédure d'exécution obtenus sans le bénéfice de cette assistance judiciaire.**

**(2)Peuvent en bénéficier :**

**a)Les indigents, les hommes de rang de toutes armes pendant la durée de leur service ;**

**b) les personnes assujetties au tarif du taux A de l'impôt forfaitaire ;**

**c) les personnes assujetties à l'impôt minimum fiscal par an ;**

**d) les personnes non concernées par les alinéas a, b, c ci-dessus lorsque les frais à exposer ne peuvent être supportés par leurs ressources initialement réputées suffisantes ;**

**e) l'épouse, mère d'enfant mineur, en instance de divorce qui ne dispose d'aucun revenu propre**

24- MBI Group Inc et Atlantic Group SCI  personnes morales ne peuvent bénéficier des dispositions de cette loi. Il est impensable qu'une demande puisse être initiée en leur nom par leurs adversaires l'Etat du Cameroun et le Crédit Foncier du Cameroun.

25-Par ailleurs, il est à préciser qu'une fois que les demandeurs que sont MBI GROUP Inc et ATLANTIC GROUP SCI se seraient acquittés de la consignation exigée par l'article 24 du code de procédure civile et commerciale, la partie adverse fera valoir **l'exception de la caution à fournir par les étrangers (Caution judicatum solvi)** qui est imposée par l'article 73 du même code pour garantir les frais et dommages-intérêts auxquels ils pourraient être condamnées.

26- Le montant de cette caution est fixé souverainement par le juge.

27-La procédure initiée par MBI GROUP Inc et ATLANTIC GROUP SCI est en l'état actuel inexistante car la consignation n'a pas été payé ceci est conforté par le

certificat de non enrôlement délivré par le Greffier en Chef du Tribunal de grande Instance. Par ailleurs celle ayant permis l'enrôlement de l'assignation des demandeurs par les défendeurs autorisé par le Président du Tribunal est originale et voudrait tromper le juge américain de l'existence d'une procédure qui n'obéit pas aux règles du droit camerounais

NKANA J. JULES
AVOCAT
B. P. 7001 . YAOUNDE
TEL (237) 23.42.65/253.76.75
+3.3566 32 0 60 3 / +3.81 83 80 4 41 8

**CONSULTATION REQUESTED BY BARRISTER NKANA JOSEPH JULES, LAWYER BASED IN YAOUNDE, CAMEROON, ON BEHALF OF MBI GROUP INC., AND ATLANTIC GROUP SCI COMPANIES**

## I-    TERMS OF REFERENCES

- **MBI GROUP COMPANY INC., and**
- **ATLANTIC GROUP COMPANY SCI**

Through their Counsel, Barrister Joseph Jules NKANA, Lawyer based in Yaounde,

Consulted us to know whether it is possible in court practice and under Cameroon law for a person, author of a summons, who, for one reason or another, fails to cause a matter to be enrolled on the cause-list before the court, to be obliged by the summoned party through whatever means to cause such matter to be entered on the cause-list.

Correlatively, we are requested to state whether a physical person or corporate body who expresses through a summons, the intention to sue another person, but who cannot or does not intend to pay the deposit provided for by law for enrolment of the matter on the cause-list, be replaced in the fulfilment of such obligation by the person whom he intends to sue.

Furthermore, they would like to know if the applicant whom the registry requests to pay the deposit for the enrolment of the matter on the cause-list can avoid such payment by resorting to the provisions of the General Tax Code to reduce the deposit he is requested to pay.

## II- PRESENTATION OF CONSULTANTS

Referred to for consultation,

We,

1) **Emmanuel TEHGE HOTT**, Member of the Cameroon Bar Association since July 1979, about thirty (30) years ago;
- Member of the Bar Council from 1986 to 1988;
- Member of the Bar Council from 1996 till date;
- Former Treasurer of the Cameroon Bar Association (1996 – 2000);
- Former Deputy Representative of the President of the Bar Association in the Littoral Province (2004 – 2006);
- Current Representative of the President of the Bar in the Littoral Province since 2006;
- Participant at several seminars on the law on the Organisation for the Harmonisation of Business Law in Africa (OHADA).
2) **Marthe MASSOT ENDALE**, Member of the Cameroon Bar Association since 1978, about thirty (30) years;
- Member of the Bar Council (2004 – 2006);
- Secretary of the Bar (2006 – 2008);

Declare on honour as follows:



EXHIBIT

I

### III- __DECLARATION__

1- In civil matters governed by Cameroon law, the commencement of proceedings is incumbent on the parties.

2- The party that chooses to seise the court by summons does so through a Sheriff-Bailiff who serves the summons on the opponent.

3- The writ even though served on the opponent, is not enough to complete the submission of the matter before the court referred to in the writ.

4- For the court referred to in the writ to be effectively seised, the claimant is bound to submit the writ to the registry that will tell him the amount of the deposit to pay in accordance with the law.

5- It is after payment of such deposit that the Registrar enters the matter on the cause-list before the court that is then seised.

6- Therefore, the claimant is bound to fulfil the following two conditions to seise the court:

a) To cause the writ to be served, and

b) Pay the deposit at the registry.

7- This is in application of the provisions of Sections 5 and 24 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code) which provide:

__Article 5:__ "Subject to the provisions of Sections 18 and following, proceedings in civil and commercial matters shall commence with a writ."

__Article 24:__ "Except in the case of legal aid, the claimant shall, before instituting any proceedings, be bound to pay a sufficient deposit at the registry of the court he intends to seise to guarantee the payment of fees, registration and stamp duty..."

8- The law provides that proceedings shall commence with a writ.

9- The institution of proceedings means the initiator's will to sue his opponent by notifying him of the court before which he has to appear.

10- The law equally provides that the claimant shall pay the deposit.

11- As such, the court cannot be seised if the deposit is not paid.

12- The only exception provided for by the law to avoid payment of the deposit is application for legal aid through which poor people may be exonerated in full or in part from the payment of "sufficient amounts."

13- The provisions of the *"Code de Procédure Civile"* (Civil Procedure Code) in this case does not make it possible for a physical person or corporate body against whom proceedings have been instituted by writ to pay the deposit in place of the claimant, or apply for legal aid.

14- Therefore, causing the matter to be enrolled on the cause-list is incumbent on the person who instituted the proceedings.

15- The claimant or initiator of the action is the person who enjoys the privilege of delimiting the original scope of the claim, and choosing the time to start hostilities.

16- The defendant does not choose his quality in the matter; his quality is imposed on him.

17- Besides, the defendant cannot take the place of the claimant on the basis of the writ of summons to claim to seise the court whereas the latter may withdraw the matter even before the court is effectively seised.

18- In our thirty (30) years as professional lawyers, we have never seen court practice in Cameroon where the person summoned uses the claimant's insolvency as an excuse to cause the enrolment on the cause-list of the matter briefly stated in the writ of summons without, moreover, having paid the legally required deposit.

19- It must be recalled that in accordance with Section 24 of the above-mentioned *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code), the deposit to be paid at the registry by the claimant includes "fees, and registration and stamp duty."

20- Clearly, the deposit comprises two types of fees: general fees also known as registry fees, and registration and stamp duty fees.

21- Therefore, the provisions of Section 24 of the *"Code de Procédure Civile"* (Civil Procedure Code) clearly prescribe that even if a physical person or corporate body governed by private law or public law is exempted from payment of registration and stamp duty fees, the Registrar may always require him to pay registry fees for the matter he intends to file before the court to be enrolled on the cause-list.

22- The provisions of Section 286 of the General Tax Code (GTC) of the Republic of Cameroon determine the basis of the registration and stamp duty fees of judgments.

23- These provisions cannot be interpreted as an exception to the obligation of payment of a "prior and sufficient" deposit before the enrolment of the matter on the cause-list.

24- Furthermore, this instrument does not give the person considered in the writ of summons as the Defendant the right to move the court or the Judge by motion for enrolment "on credit" on the cause-list of the matter for which he is not the author subject to deferred payment of the deposit by the initiator of the proceedings.

25- Rather, the provisions of the General Tax Code clearly state that a corporate body governed by private law that claims to be the creditor of a corporate body governed by public law or the State cannot avoid payment of the deposit which is generally fixed at a minimum rate of 5 per cent of the claim.

26- Such body governed by private law cannot escape prior payment for it does not enjoy the privilege of registration in debit or registration free of charge respectively provided for in Sections 336 and 337 of the General Tax Code.

27- The prior payment of deposit by such claimant set out in Section 24 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code) is further provided for in Section 304 of the General Tax Code as follows:

"The fees for instruments and transfers shall be paid before registration at the rates and subject to the amounts laid down in this Code. No person may reduce or defer payment…"

28- Thus, such claimant must first pay the deposit such as laid down by the law even if it means obtaining refunds at the end of the matter by joint application of Sections 286 of the General Tax Code on the final assessment of the registration fees and 332 of same Code which provides: "Assessment errors duly recorded by the service shall lead to an automatic refund of such incorrectly and improperly collected fees."

29- Therefore, for a company governed by private law to seise a court, the obligation to pay a sufficient deposit beforehand is legally unavoidable.

30- Ruling No. 8 delivered on 15 July 2008 by the President of the High Court, Mfoundi takes a new and original procedure.

31- Where a party intends to protect its interests by court action, it chooses either to stand as principal claimant by seising the competent court in accordance with Sections 5 and 24 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code) or hanging on to the opponent's claim duly referred to the court by filing a counter-claim.

32- Ruling No. 8 appealed against stems from a diktat of the organ that delivered it and which hides some duplicity.

33- After having caused the matter to be enrolled on the cause-list in the stead of **MBI GROUP** and **ATLANTIC SCI** companies, will the opponent, on their behalf, request that they be exonerated from the CAUTIO JUDICATUM SOLVI provided for in Section 73 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code) or that its payment be deferred or reduced? That, as well, would be an original and new procedure.

Done at Douala in Cameroon, 30 July 2008.

(sgd)

**Barrister Emmanuel TEHGE HOTT**          **Barrister Marthe MASSOT ENDALLE**

## CONSULTATION DEMANDEE PAR Me NKANA JOSEPH JULES, AVOCAT A YAOUNDE CAMEROUN POUR LE COMPTE DES SOCIETES MBI GROUP INC. ET ATLANTIC GROUP SCI

### I-    TERMES DE REFERENCE

- La société MBI GROUP INC. et
- La société ATLANTIC GROUP SCI

Par l'intermédiaire de leur conseil Me Joseph Jules NKANA, Avocat à Yaoundé,

Nous ont consulté à l'effet de savoir s'il est possible dans la pratique judiciaire et en Droit Camerounais qu'une personne auteur d'une assignation qui pour une raison ou pour une autre ne fait pas enrôler l'exploit devant le Tribunal puisse être obligée par la partie assignée par quelques voies que ce soit à faire enrôler cet acte.

Corrélativement, il nous est demandé d'indiquer si une personne morale ou physique qui exprime par une assignation l'intention d'ester en Justice contre une autre mais qui ne peut pas ou n'entend pas fournir la consignation exigée par la loi pour l'enrôlement de l'affaire peut se voir être substituée à l'accomplissement de cette obligation par la personne contre laquelle elle se propose d'agir.

Dans le même ordre la partie demanderesse à laquelle le greffe oppose le règlement de la consignation pour l'enrôlement de l'affaire peut-elle éviter ce règlement par le recours aux dispositions du Code Général des Impôts pour minorer la consignation qui lui est demandée.

### II-    PRESENTATION DES CONSULTANTS

Saisis de cette consultation,

Nous,

1) **Emmanuel TEHGE HOTT**, Avocat inscrit au Barreau du Cameroun depuis le mois de juillet 1979, soit il y a trente (30) ans environ,
- Membre du Conseil de l'Ordre de 1986 à 1988,
- Membre du Conseil de l'Ordre de 1996 à ce jour,
- Ancien Trésorier de l'Ordre des Avocats au Barreau du Cameroun (1996 – 2000)
- Ancien Représentant Adjoint du Bâtonnier dans la Province du Littoral (2004 – 2006)
- Représentant actuel du Bâtonnier dans la Province du Littoral depuis 2006
- Participant aux nombreux séminaires sur le droit portant Organisation et Harmonisation en Afrique du Droit des Affaires (OHADA)

2) **Marthe MASSOT ENDALE**, Avocat inscrite au Barreau du Cameroun en 1978, soit depuis trente (30) ans.
- Membre du Conseil de l'Ordre (2004 – 2006)
- Secrétaire de l'Ordre 2006 – 2008

Faisons sur l'honneur la déclaration ci-après.

## III-    DECLARATION

1- En Droit Camerounais et en matière civile, la direction du procès est l'affaire des parties.

2- La partie qui choisit de saisir le Tribunal par voie d'assignation passe par un Huissier de Justice qui sert l'exploit à son adversaire.

3- Cet exploit bien que servi à la partie adverse ne suffit pas à lui seul pour emporter la saisine de la juridiction visée dans l'acte.

4- Pour que la juridiction désignée sur cet acte soit effectivement saisie, elle a l'obligation de soumettre cet acte au greffe qui lui indique la consignation à payer conformément à la loi.

5- C'est après le règlement de cette consignation que le Greffier enrôle l'affaire devant le Tribunal qui alors s'en trouve saisi.

6- Donc le demandeur est tenu d'accomplir deux actes préalables pour saisir le Tribunal

a) Faire servir une assignation
b) Payer la consignation au greffe

7- C'est l'application des dispositions des articles 5 et 24 du Code de Procédure Civile et commerciale aux termes desquelles :

**Article 5** : « Sous réserve de ce qui sera dit aux articles 18 et suivants, les instances en matière civile et commerciale sont introduites par assignation ».

**Article 24** : « Hormis les cas d'assistance judiciaire, le demandeur est tenu avant toute instance de consigner au greffe de la juridiction qu'il entend saisir une somme suffisante pour garantir le paiement des frais, enregistrement compris... »

8- La loi précise bien que les instances sont introduites par assignation.

9- Introduire une instance signifie pour l'initiateur du procès de manifester sa volonté d'agir contre son adversaire en lui indiquant le Tribunal devant lequel il devra comparaître.

10-La loi précise également que le demandeur est tenu de produire la consignation.

11-Donc le Tribunal ne saurait être saisi si la consignation n'est pas payée.

12-La seule dérogation légale que prévoit la loi pour éviter le paiement de la consignation par le demandeur est le recours à l'assistance judiciaire par laquelle les personnes indigentes peuvent se voir exonérer totalement ou partiellement de cette obligation de consigner « sommes suffisantes ».

13-Les dispositions du Code de Procédure Civile en la matière n'ouvrent pas la possibilité à une personne physique ou morale contre laquelle l'instance est introduite par

assignation soit à payer la consignation à la place de l'initiateur du procès, soit de solliciter l'assistance judiciaire en sa faveur.

14-L'enrôlement est donc l'affaire de la personne qui introduit l'instance.

15-Le demandeur ou l'initiateur de l'action est la personne qui jouit du bénéfice de délimiter le cadre primitif du procès, de choisir le moment où s'engageront les hostilités.

16-Le défendeur ne choisit pas sa qualité processuelle, elle lui est imposée.

17-Aussi le défendeur ne peut-il pas prendre la place du demandeur sur la base de l'acte introductif d'instance pour prétendre saisir la juridiction alors que ce dernier peut se rétracter avant la saisine effective du Tribunal.

18-En trente années de profession d'Avocat, la pratique judiciaire au Cameroun ne nous a révélé aucun cas du genre ou la personne assignée comme défenderesse prend prétexte de l'inertie ou de la carence du demandeur pour obtenir l'enrôlement de l'affaire sommairement décrite dans l'acte introductif d'instance sans au surplus s'être acquittée de la consignation légalement requise.

19-Rappelons encore que d'après l'article 24 du Code de Procédure Civile et Commerciale susvisé, la consignation à payer au greffe par le demandeur comprend les « frais, enregistrement compris ».

20-En clair, la consignation est constituée de deux genres de frais, les frais généraux appelés encore frais de greffe et les frais d'enregistrement.

21-Le texte de l'article 24 du Code de Procédure Civile permet donc de comprendre que même si une personne physique ou morale de droit privé ou de droit public est dispensée du paiement des frais d'enregistrement, le Greffier peut toujours la soumettre aux frais de greffes pour parvenir à l'enrôlement de la procédure qu'elle entend engager.

22-Les dispositions de l'article 286 du Code Général des Impôts (CGI) de la République du Cameroun, fixent l'assiette des droits d'enregistrement des jugements.

23-Ces dispositions ne peuvent pas être interprétées comme constituant une dérogation à l'exigence du versement d'une consignation « préalable et suffisante » avant l'enrôlement de la procédure.

24-De plus ce texte n'ouvre pas à la personne considérée dans l'acte d'assignation comme défenderesse le droit de saisir le Tribunal ou le Juge par requête pour l'enrôlement « à crédit » d'une procédure dont elle n'est pas l'auteur sous réserve d'un paiement différé de la consignation par l'initiateur de ladite procédure.

25-Bien au contraire l'ensemble des dispositions du Code Général des Impôts permet de comprendre aisément qu'une personne morale de droit privé qui prétend être créancière d'une personne morale de droit public ou de l'Etat ne peut pas échapper au paiement de la consignation qui est généralement fixée au taux minimum de 5% de la demande.

4

26-Cette personne de droit privé ne peut pas échapper à ce paiement préalable car ne jouissant     ni du privilège de l'enregistrement en débet prévu à l'article 336 du Code Général des Impôts ni du bénéfice de l'enregistrement Gratis prévu à l'article 337 du même Code.

27-Le caractère préalable du paiement de la consignation par un tel demandeur énoncé à l'article 24 du Code de Procédure Civile et Commerciale est renforcé par l'article 304 du Code Général des Impôts suivant lequel :

« Les droits des actes et ceux des mutations sont payés avant l'enregistrement aux taux et quotités fixés par le présent Code. Nul ne peut en atténuer ni différer le paiement... »

28-Un tel demandeur doit donc d'abord payer la consignation telle que fixée par la loi quitte à se faire rembourser en fin de procès par application combinée des articles 286 du Code Général des Impôts sur la liquidation définitive des droits d'enregistrement et 332 du même Code qui prévoit que : « Les erreurs de liquidation dûment constatées par le service donnent lieu à restitution d'office à concurrence des droits indûment ou irrégulièrement perçus ».

29-Ainsi donc pour la saisine d'une juridiction par une société de droit privé, l'obligation de payer une consignation préalable et suffisante est légalement incontournable.

30-L'ordonnance n° 08 rendue en date du 15 juillet 2008 par le Président du Tribunal de Grande Instance du MFOUNDI procède d'une démarche originale et inédite.

31-Lorsqu'une partie entend sauvegarder ses intérêts par une action judiciaire, elle a le choix soit de se porter demanderesse principale en introduisant l'instance devant la juridiction compétente conformément aux articles 5 et 24 du Code de Procédure Civile et Commerciale, soit de se greffer sur la procédure adverse dont le Tribunal est régulièrement saisi en se portant demanderesse reconventionnelle.

32-L'ordonnance n° 08 querellée procède d'un imperium de l'organe qui l'a rendue qui cache une certaine duplicité.

33-Après avoir fait enrôler la procédure, en lieu et place des sociétés MBI GROUP et ATLANTIC SCI, la partie adverse va-t-elle demander en leur nom qu'elles soient exonérées de la CAUTIO JUDICATUM SOLVI prévue à l'article 73 du Code de Procédure Civile et Commerciale ou que le paiement de celle-ci soit différé ou minoré? Cela procèderait encore d'une certaine originalité et de l'inédit.

Fait à Douala au Cameroun

Le 30 juillet 2008

Me Emmanuel TEHGE HOTT                    Me Marthe MASSOT ENDALE

**Maitre Marcel S. Eyidi- Ngomba**
Barrister-at-Law and Member of the Cameroon Bar Association
P.O Box 2815 Douala, Tel:/GSM/99 73 96 57
E-mail: bidouala2006@yayoo.fr
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Douala, 5 August 2008

## <u>DECLARATION ON HONOUR</u>

Drawn up within the framework of a civil matter between MBI Group INC., Atlantic Group SCI and the State of Cameroon represented by the Minister of Finance and the Housing and Loan Fund of Cameroon.

I, the undersigned, Barrister Marcel Sébastien. Eyidi Ngomba, Barrister-at-law and member of the Cameroon Bar Association since July 1989, with about twenty (20) years of experience, whose chambers is situated at 547 Rue Joffre in Akwa, Douala, Cameroon, P.O Box 2815, E-mail:bidouala2006@yayoo.fr, Tel: (237) 99 73 96 57.

Counsel for Messrs Tchoufa Roger and Djomo Charles Constant (the brother-in-law of Tchoufa Roger) and Mrs. Tchoufa Ngongo Djomo Felicité in the matter pitting the People of Cameroon and the Housing and Loan Fund of Cameroon against Booto A Ngon André, (former Board Chairman of the Housing and Loan Fund of Cameroon), Edou Joseph, (former General Manager of the Housing and Loan Fund of Cameroon) and many others including those that I defended.

The matter brought before the Criminal Section of the High Court, Mfoundi, which delivered a verdict on the 11th day of July 2008, sentencing Tchoufa Roger to forty-five (45) years imprisonment with hard labour, Djomo Chaires Constant to 15 years imprisonment with hard labour and Mrs. Tchoufa Ngongo Djomo Felicité to 30 years imprisonment with hard labour.

Counsel having also participated in drawing up the writ on behalf of the MBI Group INC. and the Atlantic Group SCI companies which writ was served on the State of Cameroon represented by the Minister of Finance and the Housing and Loan Fund of Cameroon on the 24th day of June 2008 inviting the interested parties to appear before the court on the 9th day of July 2008 conducted by the Civil and Commercial Section of the High Court, Mfoundi, Yaounde.

## 1. <u>ATTESTATION</u>

1.  Duly and solemnly **testify** by this declaration that the writ of 24 June 2008 mentioned above was not submitted to the Registry and consequently, has been entered neither on the general register nor on the cause-list for want of fulfilment of the requisite formalities for seising Cameroon law courts.

2.  It is worthy of note that in Cameroon, to seise a court with a civil or commercial matter, one needs to fulfil two requirements.

**EXHIBIT**

J

3. The person wishing to seise a court of a matter against an opponent must manifest their intention to take legal action.

4. This manifestation of the intention to take legal action is done through a writ which states the date of the hearing, the court chosen and the means of defence. Once the opponent is informed of the claim against them, the initiator of the legal action must fulfil one requirement, namely pay at the Registry of the court seised a sufficient deposit to cover registry fees and the eventual court judgment registration fees.

5. These two requirements are provided for by Sections 5 and 24 of the **"Code de Procédure Civile et Commerciale"** (Civil and Commercial Procedure Code). Section 24 stipulates that "Except in the case of legal aid, the claimant shall, before instituting any proceedings, be bound to pay a sufficient deposit at the registry of the court he intends to seise to guarantee the payment of fees, registration and stamp duty…"

6. The expression "**shall be bound to**" implies that this is an obligation the non respect of which shall render the court seised unable to hear the matter. Consequently, a court can be seised only after the complete payment of this prescribed compulsory deposit.

7. The only situation where this provision requiring the compulsory payment of a "**sufficient**" amount of money can be made flexible is when it applies to the destitute.

8. Entering a case on the cause-list is exclusively the responsibility of the person taking the initiative to seise a court and Section 24 mentioned above states it clearly "**the claimant must…**"

9. The defendant, the court registrar and to a lesser extent the Judge to rule on a case cannot fulfil this condition in the stead of the claimant.

10. The writ of 24 June 2008 was not entered on the cause-list because the claimants concerned failed to pay the compulsory deposit fixed in accordance with the legal instrument governing the payment of a registration fee representing 5 per cent as stipulated by the General Tax Code in its Sections 342 (9) and 543 (C).

11. All court registries in Cameroon model the amount of deposit to be paid on the basis of the registration fees because courts having wide-ranging powers of assessment hardly grant damages corresponding to the amounts requested so much so that they always fall back on their fees.

12. And even where registry fees reduce the deposit to an amount that cannot defray court judgment registration fees, the claimant is bound to make good the amount.

## II. DECLARATION

13. Having read the injunction on the Registrar-in-Chief to enter, on the cause-list, the procedure initiated by the MBI Group INC. and the Atlantic Group SCI companies, and considering that the matter could not be called up for hearing on the date stipulated in the writ and that a certificate of non entry on the cause-list was duly issued and served on the claimants, an injunction issued following a petition initiated by the State of Cameroon represented by the Minister of Finance and the Housing and Loan Fun of Cameroon.

14. I hereby declare on honour and on oath which I took that this is an original and new procedure.

15. Indeed, seising a court is solely and exclusively the responsibility of the claimant.

16. The State of Cameroon represented by the Minister of Finance and the Housing and Loan Fun of Cameroon that are defendants in the writ of 24 June 2008, have no powers to request or demand that this writ be entered on the cause-list.

17. If these defendants in the writ of 24 June 2008 legally wanted the Cameroon courts to remain seised of this case, they would have seised them as principal claimants instead of outsmarting the Judge in charge of interlocutory matters and obtaining from him an order which reveals the partiality of the judges handling this matter and the unorthodox behaviour of those responsible for helping in the delivery of justice in Cameroon.

18. It is unbelievable for the President of the High Court, who has no powers to deliver interlocutory rulings par excellence (his powers are limited to the delivery of orders on divorce cases, injunctions to pay and issues concerning companies in difficulties) to take upon himself to order a court Registrar to enter a procedure on the cause-list in violation of the provisions of Section 24 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code) as well as Sections 342 and 543 of the General Tax Code simply because the claimant is the State of Cameroon.

19. It is equally unbelievable that internationally renowned legal experts can go to the extent of requesting for original decisions without any legal backing simply because they want to please the State of Cameroon, which is their client.

20. Ruling No. 8 delivered on 15 July 2008 by the President of the High Court, Mfoundi constitutes an act treachery against the Cameroon judiciary, an offence according to law purists and proof of the iniquity surrounding this procedure in Cameroon.

21. After having requested for and obtained the entry on the cause-list of this writ, will the State of Cameroon and the Housing and Loan Fund of Cameroon

request that MBI Group INC. and the Atlantic Group SCI companies be exonerated from the "CAUTIO JUDICATUM SOLVI" of Section 75 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code)?

22. Did the State of Cameroon and the Housing and Loan Fund of Cameroon that requested for and obtained the entry of this writ on the cause-list fulfil the requirements contained in Section 24 of the *"Code de Procédure Civile et Commerciale"* (Civil and Commercial Procedure Code)?

23. How can a court deny justice to a claimant seeking justice in a case wherein he has been wronged, and allow the person guilty of the wrongdoing to say "**judge us**" by entering on the cause-list the writ issued by his opponent?

24. Definitively, this is really an original and new procedure which one cannot have elsewhere, not even in Cameroon, considering the timbre of the seasoned and honest legal experts that this country has groomed and who work with the international community, safe for those who allow their personal interests to reign supreme to the detriment of the good image of the Republic of Cameroon, our beloved and beautiful country.

I declare under the penalty of perjury under the laws of United States of America that the statement made in the declaration are true and correct.



Marcel Sébastien
Eyidi – Ngomba
AVOCAT

M.P

JUDICIAL YEAR 2008

.....................

JUDGMENT No._____/CRIM

OF 11th JULY 2008

.............

IN THE MATTER OF CO-OFFENDER AND MISAPPROPRIATION OF PUBLIC FUNDS BETWEEN THE PEOPLE

AND

THE HOUSING AND LOAN FUND OF CAMEROON (CFC)

AND/

1. Booto A Ngon André

2. Edou Joseph

3. Mrs. Kwa Mbette Ndame Mpongo Yole

4. Essama Zoh Gervais Martial

5. Meke Raphaël

6. Tienta Côme

7. Kooh II Charles

8. Tchoubet Joseph

9. Mrs. Foumena Georgette Biabi

10 Dieudonné Nzoke

11 BAMA Michel

12 Tchuyassi Joseph

REPUBLIC OF CAMEROON

Peace –Work – Fatherland

.................

SUIT No. 06-A 1828/PPR-TGI/MFOUNDI

- ORDINARY OPEN COURT SESSION OF JULY (CRIMINAL Section)

The High Court, Mfoundi, sitting on criminal matters in Yaounde on the 11th day of July 2008 in ordinary open court session in a panel comprising:

- Mrs. Meka Messomo Bernadette, Judge of the High Court, Mfoundi-Presiding Magistrate;

- Mr. Manga Foe Charles Rémy, Judge of the High Court, Mfoundi- Member;

- Mrs. Chembou Annie Hortense, Judge of the High Court, Mfoundi-Member;

Sitting without an interpreter in the matter between:

THE PEOPLE AND THE HOUSING AND LOAN FUND OF CAMEROON (CFC)

AND

1. Booto A Ngon André; 2. Edou Joseph; 3. Mrs.Kwa Mbette Ndame Mpongo Yole; 4. Essama Zoh Gervais Martial; 5. Meke Raphaël; 6.Tienta Côme; 7. Kooh II Charles, 8. Tchoubet Joseph, 9. Mrs. Foumena Georgette Biabi; 10. Nzoke Dieudonné; 11. Bama Michel; 12. Tchuyassi Joseph ; 13. Bikoko Jean ; 14.



EXHIBIT

K

13 Bikoko Jean

14 Mrs. Amougou ATCHE A NGON

15 Amougou Albert Roland

16 Lenteu Nguemeni Ernest

17 Abolo Albert Désiré

18 Chatchuin Nicéphore

19 Naoussi Fabien

20 Mintanguele Alexis

21 Moussio Mouelle

22 Bema Emmanuel

23. Koh Koh

24 Tchoufa Roger

25. Nkoro Jacques

26 Djomo. Charles Constant

27. Mrs. Tchoufa Ngongo Djomo
    Félicité Isabelle

28. Zibi Samba Nicolas Francis

29. Onana Victor

30. Eyia Dieudonné Jean Oscar

31. Engoulou Jean Paul

COURT DECISION:

(SEE THE VERDICT)

Mrs. Amougou Atche A Ngon; 15 Albert Roland Amougou; 16. Lenteu Nguemeni Ernest; 17 Abolo Albert Désiré; 18. Chatchuin Nicéphore; 19 Naoussi Fabien; 20. Mintanguele Alexis; 21. Moussio Mouelle; 22 Bema Emmanuel ; 23. Koh Koh; 24 Tchoufa Roger; 25. Nkoro Jacques; 26. Djomo Charles Constant; 27. Mrs. Tchoufa Ngongo Djomo Félicité Isabelle; 28. Zibi Samba Nicolas Francis; 29. Onana Victor; 30 Eyia Dieudonné Jean Oscar; 31. Engoulou Jean Paul;

With Mbratana Pierre as Registrar in attendance;

In the presence of the following parties:

On the one hand

THE LEGAL DEPARTMENT, leading prosecution and represented by

*Messrs. Awono Elele Ambroise and Tejiozem Rogatien*, Substitutes of the State Counsel of the High Court, Mfoundi;

AND

HOUSING AND LOAN FUND OF CAMEROON Abbreviated C.F.C, as civil claimant with Barristers Noah Guy and Muna, Members of the Cameroon Bar Council, as Counsels;

And on the other hand

Defendants:

1. Booto A Ngon André, aged 68, born on 15

October 1940 at Ngoifé, son of André Ngon A Booto and of Ndem A Goufan Dorcas, Senior Inspector of Taxation, Member of Parliament, National Assembly of Cameroon, Cameroonian resident at Bafia, accused as co-offender in misappropriation of public funds and interest in grant, appearing with Barrister Assamba, Member of the Cameroon Bar Council, as Counsel;

2. Edou Joseph, aged 56, born on 17 August 1952 at Mengang Akonolinga, son of Mbida Pascal and of Evina Amah, lecturer at the University of Yaounde II, former General Manger of the HOUSING AND LOAN FUND OF CAMEROON, Cameroonian resident at Bastos – Yaounde, accused as co-offender in misappropriation of public funds and interest in grant and swindling, abetting in forgery and false evidence, detained in accordance with committal order of 21 February 2006, appearing in court with Barristers Ntolo, Ngomo Mba, Ngongo Ottou, Mben Sylvestre and Memong Philippe, Members of the Cameroon Bar Council, as Counsels;

24. Tchoufa Roger, aged 47, born on 27 November 1961 at Melon, son of Njonfang Alfred and Nguetcham Marguerite, Cameroonian, resident at 10707 DR Gloxina,

Bethesda, Maryland, USA, did not appear, accused as co-offender in misappropriation of public funds, wanted, pursuant to the international warrant of arrest of 20 March 2006, and the national warrant of arrest of 8 May 2006 served on mayor's office on 10 May 2006;

26. Djomo Charles Constant, aged 38, born on 27June 1970 at Yaounde, son of Djomo Marcel and of Tuendem Rebecca, Businessman, Cameroonian resident at Douala, accused as co-offender in misappropriation, detained pursuant to the warrant of arrest of 8 May 2006, executed on 25 September 2006, and released in accordance with the conditional bail order against the payment of a deposit of 15,000,000 FCFA of 11 October 2006, appearing in court, with Barristers Eyidi-ngomba and Nkana Jules, Members of the Cameroon Bar Council, as Counsels;

27. Mrs.TCHOUFA Ngongo Djomo Félicité Isabelle, aged 44, born on 22 February 1964 at Yaounde, daughter of Djomo Marcel and of Tchuendem Rebecca, Legal Adviser resident at Douala-Akwa, Cameroonian, accused as co-offender in misappropriation of public funds and under the international warrant of arrest

of 7 September 2006 and the national warrant of arrest of 26 July 2006 served on the mayor's office on 8 August 2006, did not appear, with Barrister Eyidi-ngomba and Nkana Jules, Members of the Cameroon Bar council, as Counsels;

CASE CONCERNING THE DEFENDANT Djomo Constant Charles (charged with misappropriation of public funds of CFA 3,586554,577, offence provided for and punishable under Sections 74, 96 and 184 of the Penal Code)

Whereas the defendant Djomo Charles Constant is charged with misappropriation of public funds of CFA 3,586,554,577, offence provided for and punishable under Sections 74, 96 and 184 of the Penal Code;
Whereas the accused pleaded not guilty and to defend himself, he explained by making submissions without oath:
Whereas the defendant, Djomo Charles Constant, brought before the court as co-offender in misappropriation of public funds pleaded not guilty;
That he declared that he is the brother-in-law of Tchoufa Roger who used him within the framework of the ATLANTIC GROUP, which is a

defendant Koh Koh has committed the charge
levied against him, that there is reason to
convict him;

The case concerning Tchouffa Roger (at large),
co-offender in misappropriation of public funds
of CFA 3,586,554,577;

Whereas Tchouffa Roger is accused of
misappropriation of public funds and co-
offender in misappropriation of public funds,
offences provided for and punishable under
Sections 74, 96, 184 of the Penal Code;

Whereas the defendant Tchouffa Roger who
did not appear in court is deemed to have
pleaded not guilty, that he is at large, and that
an international warrant of arrest is issued
against him;

That in support of the charge, the Legal
Department exposed that (page 81 of
submissions);

That the submissions are corroborated by the
following documents:

The service offer letter of 17 November 2004
to the General Manager of the Housing and
Loan Fund of Cameroon, referenced R 10099;

The correspondence of Atlantic Group of 12
November 2006 to the General Manager of the
Housing and Loan Fund of Cameroon,

referenced R 10101;

The lease contract, referenced R 1066;

The fax of Edou Joseph to Tchouffa Roger, referenced R 10062 to R 10064;

The UBC letter of 15 and 16 March..............., referenced R 10046 to 10048;

The vehicle bills, referenced R 10042 to R 10043 and its annexes, referenced R 10038 to 10040 paid in cash by Tchouffa Roger;

The bills of two other vehicles, referenced R 10035 to 10037; other vehicles worth CFA 40,000,000, referenced R 10032 to R 10034;

The letter of the General Manager of Atlantic Group to the Branch Manager of UBC, Douala, referenced R 9995;

That his failure to appear in court denotes that he does not have valuable arguments against the charge levied against him;

That consequently, there is reason to find him guilty and convict him as charged;

*The case concerning Mrs Tcouffa Ngongo Djomo Félicité Isabelle, co-offender in misappropriation of public funds of CFA 3,581,718,458*

Whereas Mrs Tchouffa Ngongo Félicité Isabelle is accused of misappropriation of public funds as co-offender with Tchouffa Roger, Edou Joseph and others of the sum of CFA

3,581,718,458, offences provided for and
punishable under Sections 74, 96, 184 of the
Penal Code;

Whereas the defendant who has not appeared
before the court is considered as having
pleaded guilty;

That Mrs Tchouffa is at large and an
international warrant of arrest has been issued
against her;

Whereas in support of the charge, the Legal
Department exposes that (see submissions,
page 82);

That the submissions are corroborated by the
following documents:

The estimates of the *Compagnie Equatoriale
de bois* of October 2005, referenced R9784 to
R9789;

The deed of Tchouffa Roger to authorise his
wife to sign a mortgage deposit of CFA
100,000,000, referenced R9029;

Deed to give his wife power of attorney on a
joint and several deposit of CFA 100,000,000,
referenced R9830 to R9834;

That her failure to appear in court denotes
that she does not have valuable arguments
against the charge levied against her;

That consequently, there is reason to find her
guilty and convict her as charged;

UPON THESE GROUNDS

Ruling in open court, in default, against the following defendants:

Mrs Kwa Mbette Ndame Mpongo Yole;

Bikoko Jean;

Abolo Albert Désiré;

Chatchuin Nicéphore;

Naoussi Fabien;

Nkoro Jacques;

Mrs.Tchoufa née Ngongo Djomo Felicté Isabelle;

Tchoufa Roger;

Engoulou Jean Paul;

With full arguments from the following defendants:

Booto A Ngon André;

Edou Joseph;

Essama Zoh Gervais Martial;

Meke Raphaël;

Tienta Côme;

Kooh II Charles;

Tchoubet Joseph;

Mrs. Foumena Georgette Biabi A Ngon;

Nzoke Dieudonné;

Bama Michel;

Tchuyassi Joseph;

Mrs. Amougou Atche A Ngon;

of CFA 40,000;

Mrs. Kwa Mbette Ndame Mpongo Yolè - 25 years imprisonment with hard labour;

Bikoko Jean - 12 years imprisonment with hard labour;

Abolo Albert Désiré - 12 years imprisonment with hard labour;

Chattchuin Nicéphore - 12 years imprisonment with hard labour;

Naoussi Fabien - 12 years imprisonment with hard labour;

Nkoro Jacques - 25 years imprisonment with hard labour;

Tchoufa Roger - 45 years imprisonment with hard labour;

Mrs.Tchoufa Ngono Djomo Félicité Isabelle - 30 years imprisonment with hard labour;

Bama Michel - 12 years imprisonment with hard labour

Issue warrants of arrest against:

Mrs. Kwa Mbette Ndame Mpongo Yolè

Nkoro Jacques

Bikoko Jean

Abolo Albert Désiré

Chatchuin Nicéphore

Naoussi Fabien

Tchoufa Roger

Mrs. Tchoufa Ngongo Djomo Félicité Isabelle

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MBI Group, Inc.** | : | |
| **7200 Wisconsin Avenue, Suite 702** | : | |
| **Bethesda, Maryland 20814** | : | |
| | : | |
| **And** | : | |
| | : | |
| **Atlantic Group, SCI** | : | |
| **7200 Wisconsin Avenue, Suite 702** | : | |
| **Bethesda, MD 20814** | : | |
| **And** | : | |
| **40 Rue Gullien** | : | Case No: 1:07-cv-00637-JDB |
| **Douala, Cameroon** | : | |
|       **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| | : | |
| **Crédit Foncier du Cameroun** | : | |
| **Boulevard du 20 Mai** | : | |
| **Yaoundé, Cameroon** | : | |
| | : | |
| **And** | : | |
| | : | |
| **The Government of** | : | |
| **The Republic of Cameroon** | : | |
| **Yaoundé, Cameroon** | : | |
|       **Defendants** | : | |

## <u>DECLARATION OF FELICITE DJOMO TCHOUFA</u>

I, Felicite Djomo Tchoufa, being duly sworn under oath and under the penalty of perjury

under the laws of the United States of America, do hereby declare, swear and affirm that

the statements in this declaration are true and accurate and are based on my personal

knowledge.



1

1. I am married to Roger Tchoufa, the Senior Vice President of MBI Group, Inc. and the Managing Director of its Cameroonian affiliate, Atlantic Group, SCI. We have three children who are all American citizens. I currently reside in Bethesda, Maryland.

2. I am not, and have never been an employee, officer, contractor or director of MBI Group, Inc. or Atlantic Group, SCI. I have never had a professional or working relationship with the Plaintiffs.

3. I am a lawyer specializing in corporate law. I am also a member, and Chairperson of the Corporate Law Committee of the Cameroon Association of Women Lawyers (Association Camerounaise de Femmes Juristes –"ACAFEJ").

4. I am also a member of the Cameroon Association of Battered Women (Association Camerounaise des Femmes Battues), where we provide shelter, counseling, financial assistance, training and legal advice.

5. While in Cameroon, I was involved in the importation of mosquito nets which I distributed to pregnant women and children, so as to prevent malaria fever in the vulnerable communities in the country.

6. I am the founder of a United States-based non-profit organization involved in providing legal assistance to immigrants, particularly women and children.

7. I am a shareholder of the company Polyflex, a company involved in the importation of mosquito nets. I am also the owner of the company MASK.

8. Polyflex and MASK held Cameroonian government issued licenses that permitted the companies to transfer money outside of the Cameroon.

9. My only connection to the construction projects at issue in this case was when Polyflex acted as an intermediary to transfer funds from Atlantic Group to MBI at their request and pursuant to an agreement between Atlantic Group and MBI.

10. My companies' roles were limited and I neither the companies nor I retained any funds from those transactions.

11. The building from Sam Wembe was purchased Polyflex funds, and not from any funds related in any way to MBI or Atlantic. It was almost entirely paid for before May 2005.

3

I, Felicité Djomo Tchoufa, under penalty of perjury under the laws of the United States of America hereby swear that the foregoing is true and correct.

08 | 15 | 08
Date

Felicité Djomo Tchoufa

210 Redland Blvd
Rockville, MD 20850
Tel: 202 246 2716

**COURT OF APPEALS /CENTRE**                  **REPUBLIC OF CAMEROON**
       **\*\*\*\*\*\*\***
**PROSECUTION OFFICE**
**FOR THE HIGHER COURT IN MFOUNDI**

       **\*\*\*\*\***
**OFFICE OF JUDICIAL INFORMATION**
**N°06-A1-1829**
       **\*\*\*\*\*\*\***

**CASE: MP & CRÉDIT FONCIER DU CAMEROON**

**VS.**

**BOOTO A NGON, ANDRE ; EDOU, JOSEPH** *et al.*

(Misappropriation of public funds in co-action, complicity in the misappropriation of public funds, use of public and private forged documents, interest in a deed and extortion of public funds).

## ORDER FOR A PARTIAL DISMISSAL
## AND CHANGE OF VENUE BEFORE THE HIGHER COURT IN MFOUNDI IN A CRIMINAL CASE

**December 2006**

EXHIBIT

M

1

**Certified True Translation**
Qualified Court Translator & Interpreter in the state of Maryland and Consortium of 41 States

210 Redland Blvd
Rockville, MD 20850
Tel: 202 246 2716

An analysis of the history of ATLANTIC GROUP's account shows that he received the sum of 34 000 000 FCFA without justification, which makes him an accessory in the misappropriation of public funds;

## 30- Regarding the misappropriation perpetrated by Ngongo Djomo, Felicite, married to Tchoufa

Whereas Ngongo Djomo, Félicité has participated in the OLENBE II misappropriation through the companies POLYFLEX and MASK COMMUNICATION; after consulting with her husband, Tchoufa,

Those two companies received 110 700 000 FCFA from ATLANTIC GROUP, as evidenced in the account statement from this company shown in plaintiff's exhibit. This sum was used for purposes other than those assigned to ATLANTIC GROUP, which is the construction of 1034 housing units in OLEMBE;

In reality, this money allowed the Tchoufa spouses to buy a building in the New-Deido area from Wembe, Samuel and to import all the materials needed for setting up the water-bottling facility in YATO;

In so acting, she committed the crime of misappropriation of public in co-action;

Whereas, mindful of her misdemeanor, the indicted, who was in charge of communication at the Port Autonome of Douala, disappeared to take refuge in the United States by her husband Tchoufa, Roger;

Whereas, an international arrest warrant was issued against her which, is a form of indictment;

It is relevant to impute this crime to her;

8

**Certified True Translation**
Qualified Court Translator & Interpreter in the state of Maryland and Consortium of 41 States