UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MBI GROUP, INC., *et al.,* | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:07-cv-00637 (JDB) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CREDIT FONCIER DU CAMEROUN, | : | |
| *et al.,* | : | |
| Defendants. | : | |

**PLAINTIFFS' CORRECTED REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE DISMISSAL BECAUSE OF FAILURE OF
CONDITIONS AND FOR RECONSIDERATION AND TO ALTER OR AMEND
JUDGMENT AND ORDER**

Plaintiffs MBI Group, Inc. ("MBI") and Atlantic Group, SCI ("Atlantic",

collectively with MBI "Plaintiffs"), by and through undersigned counsel, and, pursuant to

this Court's order entered July 24, 2008, submit this memorandum in reply to the

opposition of defendants Credit Foncier du Cameroun ("CFC") and the Republic of the

Cameroon ("Cameroon, "collectively with CFC "defendants") to plaintiffs' motion to

vacate dismissal because of the failure of conditions, and for reconsideration and to alter

or amend judgment and order.

I.      **The Conditions Imposed by the Court Have Not and Cannot be Met by
        Cameroon's Courts**

Defendants concede, as they must, that "(t)he court registry automatically requests

the payment of a deposit on the filing of a suit, which it usually calculates on the basis of

5.25% of the amount claimed.[1]" Defendants' Opposition, at 4. And *see* declaration of

---

[1] Defendants complain that the evidence of rejection of the filing in the Cameroon is not newly-discovered
evidence. Defendants' Opposition, at 3-4. Obviously, the rejection had not occurred at the time that
plaintiffs filed their opposition to defendants' motion to dismiss. To the extent that defendants are
contending that the existence of the fee is not newly-discovered evidence, plaintiffs dispute the suggestion

Akere T. Muna ("Muna decl."), appended as Document 28-2 to Defendants' Opposition, at ¶7. They also concede that the filing fee for this case would be approximately twenty five million dollars ($25,000,000.00). *Id.*

Nor do defendants dispute that, in conformity with Cameroon law, plaintiffs' complaint in the Cameroon was rejected for the failure to pay the twenty five million dollar filing fee. Plaintiffs' Motion, at 2. And *see* Declaration of Nkana J. Jules ("First Nkana Decl.") appended thereto. *See* also Certificate of Non-Enrollment, **Plaintiffs' Exhibit ("PX") D**, appended to the Second Declaration of Roger Tchoufa (Second Tchoufa decl."), appended hereto as **PXE**.

Instead, defendants claim that they, through a "procedure" for which they identify no rule, regulation or statute, were able to obtain an "order"[2] which "permit(s) the filing of plaintiffs' lawsuit." Muna decl., at ¶ 13.[3] The issuance of that order – inarguably

---

that enforcement of this court's conditions must be done in the procedural context of a motion under Fed.R.Civ.P. 60 (b). Moreover, it was the burden of defendants to establish the availability of an alternative forum, and defendants' expert on Cameroon procedure was notably silent on the requirement of a filing fee.

Defendants also complain about "(p)laintiffs' inflated claim for damages." But defendants offer not a scintilla of evidence that that damages claim is inflated. Equally important, it is defendants who insist that plaintiffs' case – as filed in the United States, presumably including its *ad damnum* clause – is susceptible of resolution by the Cameroon courts.

[2] Exhibit B, appended to the Muna declaration, appears to be a collection of documents, all of which are in French, and, inexplicably, none of which is translated into English. As we have said before, "[i]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.... [P]arties are required to translate all foreign documents into English." *United States v. Rivera-Rosario,* 300 F.3d 1, 5, 7 n. 4 (1st Cir.2002). The submission of foreign language documents unaccompanied by English translations is error and in ordinary circumstances would bar those documents from consideration by the court. *See United States v. Contreras Palacios,* 492 F.3d 39, 43 n. 7 (1st Cir.2007). And *see* Fed.R.Civ.P. 44(a)(2) (setting out procedures for proof of a foreign record). This court should give no consideration to the documents appended as Exhibit B to the Muna declaration. Moreover, as is discussed in the following note, the declarant's description of the order, when juxtaposed against his description of the relief sought in his "granted" motion, can best be described as elliptical.

Among those documents, apparently, is the order to which defendants refer.

[3] Defendants' declarant describes the content of his motion to the High Court of Yaounde, Muna decl. at ¶12, and declares that the motion was "granted," *id.* at 13, but his description of the order provides no detail

violative of all applicable Cameroonian law and doomed to be discarded the moment the

attention of the American judiciary ends – is not only insufficient to establish the

availability of an alternate forum; it is dispositive evidence of the subordination of the

Cameroon courts to the whims and demands of the government of the Cameroon.

As noted above, defendants' declarant fails to identify the procedural justification

for any alleged filing fee "deferral."[4] The reason for that failure is clear: no procedure

exists in Cameroon law which would have permitted either plaintiff in this case to have

obtained a deferral or reduction of the fee.

As former Cameroon Bar Association president Patrice Monthe explains:

pursuant to Article 24 of the Cameroon code of civil and commercial procedure, with the

exception of "legal assistance,"[5] no filing fee deferral is permissible. *See* declaration of

Patrice Monthe, appended hereto as **Plaintiffs' Exhibit ("PX") F**.[6] He concludes: "(a)

matter filed in a Civil court in Cameroon cannot be deferred or entertained on its merits

when the prerequisite deposit has not been paid...." *Id.*, at 3.

Plaintiffs were not entitled to "legal assistance," and nothing in the records

provided by defendants suggests that "legal assistance' was considered or authorized. As

Sylvestre Mben, a Cameroon lawyer for twenty years and a member of Lawyers Without

Borders states:" said court order ... is flagrantly illegal....In twenty years of professional

---

on the terms or conditions of any "deferral." *See* Muna decl., at ¶8 (ostensibly describing fee deferrals). In fact, the order does not appear to defer or otherwise modify any required fee. It merely purports to "register" the matter for a hearing on July 23, 2008.

Plaintiffs are advised that nothing transpired on July 23, 2008, and the matter was re-scheduled for August 28, 2008.
[4] Whether plaintiffs should simply accept defendants' "gift horse" is discussed below.
[5] Discussed below.
[6] PX A, B, and C were attached to Plaintiffs' Motion.

practice, I have never yet seen such a court order and I challenge (defendants) to produce a single precedent of the sort." Declaration of Sylvestre Mben ("Mben decl."), **PX G**, at ¶¶ 3, 9. In support of his conclusion, he declares that:

> 4. ...The only possibility of not having to deposit 5% of the sum requested in the suit consists in petitioning the legal aid commission in conformity with Decree no. 76/521 dated November 9, 1976, bearing upon the organization of legal aid, and not Madam Presiding Judge of the Higher Court.
>
> 5. In conformity with the above cited Decree no. 76/521 dated November 9, 1976, legal aid is provided by a commission constituted as follows:
> - The Presiding Judge of a Lower Court or a sitting magistrate;
> - The Prosecutor for the Republic or a substitute named by him;
> - The Prefect [District Chief of National Police] or his Representative.
>
> This composition is set by Article 8 of the above-cited decree. The fact that Madam Presiding Judge of the Higher Court pronounced judgment all by herself and by means of a court order therefore constitutes a flagrant illegality.
>
> 6. The condition allowing one to petition for legal aid is indigence. Indigence according to the above-cited decree can be proved by two written documents: a certificate of non-taxation issued by the government revenue service attesting that you are not taxed because you have no income, and a certificate of indigence issued by the Mayor of your locality attesting that he knows you are an indigent. Upon viewing these two documents the commission grants legal aid.
>
> 7. MBI Group and Atlantic SCI would never have been eligible for legal aid because under no circumstances could these two companies be considered as being indigent persons to whom one could issue a certificate of indigence and a certificate of non-taxation.
>
> 8. The court order rendered by Madam Presiding Judge of the Higher Court of Yaoundé rests on no legal basis, and as proof we find in this court order an evasive statement, "in view of the stipulations of the law," without an indication of what law. The reason for this is quite simple: there is no law empowering the Presiding Judge of the Higher Court to authorize placing a case on the court docket as a set fee or reducing the 5% required by law to have a case place on the court docket.

*Id.*, at ¶¶ 4-8.

As Mr. Nkana notes in his second declaration ("Second Nkana decl."), appended hereto as **PX H**, Article 19 sets out the applicable standards and requirements for "legal aid," as follows:

> (1.) Legal aid is granted to physical persons whose resources are insufficient to assert their rights to justice or to pursue the execution of all acts and enforcement procedures obtained without the benefit of such legal aid.
>
> (2.) Persons who may so benefit:
> > (a.) The indigent, men under arms at any rank during the period of their service;
> > (b.) Persons subject to the A rating of the standard tax;
> > (c.) Persons subject to the minimum annual fiscal tax;
> > (d.) Persons not concerned by paragraphs a., b., c. above when the fees to be covered cannot be borne by the resources initially believed to be sufficient;
> > (e.) a wife who is the mother of a minor and in the process of a divorce, who does not have any personal income at her disposal.

Second Nkana decl., **PX H**, at ¶ 23. Barristers Emmanuel Tehge Hott and Marthe Massot Endalle, officers of the Cameroon Bar and with 60 years of cumulative experience concur. First, they explain that "the deposit comprises two types of fees: general fees also known as registry fees, and registration and stamp duty fees." Joint Declaration of Emmanuel Tehge Hott and Marthe Massot Endalle ("Hott-Endalle decl."), **PX I**, at ¶ 20. As attorneys Hott and Endalle further explain:

> 21.    Therefore, the provisions of Section 24 of the "Code de Procedure Civile" (Civil Procedure Code) clearly prescribed that even if a physical person or corporate body governed by private law or public law is exempted from payment of registration and stamp duty fees, the Registrar may always require him to pay registry fees for the matter he intends to file before the court to be enrolled on the cause-list....
>
> 25.    ...a corporate body governed by private law that claims to be the creditor of corporate body governed by public law or the State cannot avoid payment of the deposit....

26.  Such body governed by private law cannot escape prior payment for it does not enjoy the privilege of registration in debit or registration free of charge respectively provided for in Sections 336 and 337 of the General Tax Code.

27.  The prior payment of deposit by such claimant set out in Section 24 of the *"Code de Procedure Civile et Commerciale"* (Civil and Commercial Procedure Code) is further provided fore in Section 304 of the General Tax Code as follows: "The fees for instruments and transfers shall be paid before registration at the rates and subject to the amounts laid down in this Code. No person may reduce or defer payment."

Cameroon attorney Marcel S. Eyidi-Ngomba, who represented Roger Tchoufa ("Mr. Tchoufa") and his wife Mrs.Felicite Ngongo Djomo Tchoufa ("Mrs. Tchoufa") concurs that "(t)he only situation where this provision requiring the compulsory payment of a sufficient amount of money can be made flexible is when it applies to the destitute." Declaration of Marcel S. Eyidi-Ngomba, **PX J**, at ¶ 7. He adds that:

It is unbelievable for the president of the High Court who has no power to deliver an interlocutory ruling *par excellence* (his powers are limited to the delivery of orders on divorce cases and injunction to pay, and issues concerning companies in difficulties) to take upon himself to order a court Registrar to enter a procedure on the cause list in violation of the provisions of Section 24.... *Id.*, at ¶18.

As noted above, defendants do not provide English translations of the order upon which they rely.  Instead, defendants ask the court to adopt a declaration which asserts a fee deferral procedure for which no statute, law or regulation is identified, Muna decl., at ¶ 8, and  implying -- but carefully avoiding stating -- that the court issued an order incorporating that procedure.  *See* and *compare* Muna decl., at ¶¶ 8, 12 (describing, respectively, the "procedure" and defendants' motion) with Muna decl., at ¶13 (describing the order).

Defendants compound their obfuscation of the Cameroon litigation events and applicable laws and procedures by their silence on issues of transparent significance: the

authority of a court to issue the order which defendants imply was issued; the procedures

for "deferral," and the terms for such deferral; the standards applicable to any request for

a deferral; and the availability of the deferral to private corporations under any

circumstances.

As the declarations of Cameroon attorneys Monthe, Mben, Eyide, Hotte, Endalle

and Nkana establish, the judge who issued the order upon which defendants rely lacked

any authority to defer or waive fees; the applicable statutes and regulations limit any

deferral or waiver to cases of indigency; and, private corporations such as plaintiffs are

never entitled to deferral or waiver.

Plaintiffs cannot and should not be expected to seek the advantage of an order that

is "flagrantly illegal," Mben decl., **PX G**, at ¶ 3, and designed to "hide some duplicity."

Hott/ Endalle decl., **PX I,** at ¶ 32.  First, Cameroon appellate law makes clear that the

"registration" of the case will not withstand any review.  As Mr. Nkana explains, in

*Nyeck v. Societe' Generale des Banques of Cameroon*, the Cameroon Court of Appeals

remanded a case to the trial court for payment of fees which the trial court had overruled.

Second Nkana decl, at ¶¶ 10-20.  Fifteen years later, the *Nyeck* plaintiff continues to seek

relief.  *Id.*, at ¶ 19.  Under *Nyeck*, no claim can be pursued, and no judgment enforced, on

the basis of an incorrect modification by the judge of the filing fee requirements.

As defendants are well aware, no judgment can be pursued on the basis of the

"order" in issue – whatever it actually says.  But there is more to plaintiffs' resistance to

defendants' offer to conspire in the circumvention of Cameroon's procedural or

jurisdictional law than a pragmatic recognition of the ultimate futility of defendants'

device.

7

Defendants improperly used their power and influence over the Cameroon court to extract an order cynically designed to do no more than escape the consideration by an American court of claims brought by an American and a Cameroon company. Defendants know that the only light of day this case will ever see will come in this court. If the case can only be heard in the Cameroon, defendants' illegal order will be merely the first in an unrelenting future of obstruction and neglect by a helpless and subordinate judiciary.

Even if, therefore, defendants had presented to this court some meaningful, clear and reliable evidence that plaintiffs' case can proceed to judgment without the payment of the filing fee – and they did not – the ease with which defendants obtained its illegal order evinces far more broadly and dispositively the utter unavailability of the Cameroon courts as a forum for fair disposition of plaintiffs' claims against the court's government.

## II.    The Interest of the United States In Fighting the Corruption Alleged In This Case Exceeds the Interest of the Cameroon

Grudgingly conceding that "combating corruption is a significant international policy," Defendants' Opposition, at 9, defendants respond to plaintiffs' contention that "the interest of the United States in fighting the corruption alleged in this case exceeds the interest of the Cameroon," Plaintiffs' Motion, at 4-7, by overstating plaintiffs' position,[7] and by attempting to distinguish the opinions in *In Re Grand Jury Subpoena*

---

[7] Plaintiffs have never contended that "U.S. courts are the preferred venue for all proceedings involving alleged corruption anywhere in the world." Defendants' Opposition, at 9. Plaintiffs contend that U.S. courts are far more suited and far more likely than Cameroon courts to fairly address allegations of demands made by Cameroon officials of American companies seeking to do business in Cameroon with the assistance of American government agencies.

*Dated August 9, 2000* 218 F.Supp.2d 544, 562 (S.D.N.Y.2002) and *Republic of*

*Philippines v. Pimentel* 128 S.Ct. 2180 (2008).[8]  Those distinctions fail.

In *In Re Grand Jury Subpoena, supra,* the district court wrote that "(a) grand jury

in this district is investigating allegations that a New York corporation bribed senior

officials in a foreign country to help American companies secure the rights to the vast

natural resources of that country. At 547. Emphasizing that "the United States has a

strong national interest in combating international bribery," at 562, the district court

rejected the objections of both the foreign state and the corporation to certain subpoenas

seeking sensitive information.

That national interest does not differ solely because, as in this case, the

Americans resisted the bribery demand, rather than paid the bribe. The consequences are

the same: corruption flourishes wherever courts – civil or criminal -- and their civil

societies lack the resources or the ability to challenge it. Unlike American courts,

Cameroon's courts have shown neither the ability nor the will to confront the highest

authorities of their government with corruption charges.

In *Pimentel, supra,* the Supreme Court most assuredly did not acknowledge any

"deference accorded to foreign courts in dealing with cases arising from alleged

corruption in their countries." Defendants' Opposition, at 9. As the Supreme Court

explained the procedural posture of the case:

> A class action by and for human rights victims (Pimentel class) of
> Ferdinand Marcos, while he was President of the Republic of the
> Philippines (Republic), led to a nearly $2 billion judgment in a United

---

[8] Defendants are entirely silent on the March 17, 2008 statement of the United States government's Millennium Challenge Corporation ("MCC"), confirming its interest in the allegations of the Complaint, *see* Plaintiffs' Motion, at 6, n.6, and accompanying text, and on the significant role which was to be played in the project by The United States' Overseas Private Investment Corporation ("OPIC"). *Id.*, at n.6. Defendants should, therefore, be deemed to have conceded those contentions. *Buggs v. Powell,* 293 F.Supp.2d 135, 141 (D.D.C.2003).

States District Court. The Pimentel class then sought to attach the assets of Arelma, S.A. (Arelma), a company incorporated by Marcos, held by a New York broker (Merrill Lynch). The Republic and a Philippine commission (Commission) established to recover property wrongfully taken by Marcos are also attempting to recover this and other Marcos property. The Philippine National Banc (PNB) holds some of the disputed assets in escrow, awaiting the outcome of pending litigation in the Sandiganbayan, a Philippine court determining whether Marcos' property should be forfeited to the Republic. Facing claims from various Marcos creditors, including the Pimentel class, Merrill Lynch filed this interpleader action under 28 U.S.C. § 1335, naming, among the defendants, the Republic, the Commission, Arelma, PNB (all petitioners here), and the Pimentel class (respondents here). The Republic and the Commission asserted sovereign immunity under the Foreign Sovereign Immunities Act of 1976, and moved to dismiss pursuant to Federal Rule of Civil Procedure 19(b), arguing that the action could not proceed without them. Arelma and PNB also sought a Rule 19(b) dismissal.

The question before the Supreme Court was:

We begin with the question we asked the parties to address when we granted certiorari: Whether the Republic and the Commission, having been dismissed from the interpleader action based on their successful assertion of sovereign immunity, had the right to appeal the District Court's determination under Rule 19 that the action could proceed in their absence. At 2187.

Relief was granted on behalf of the sovereign because it had a legitimate and undisputed claim to sovereign immunity. As the Court noted, "(e)xceptions to the general principle of foreign sovereign immunity are contained in §§ 1605-1607 of the (Foreign Sovereign Immunities Act). They are inapplicable here, or at least the parties do not invoke them. Immunity in this case, then, is uncontested." At 2190.[9]

Defendants' paraphrased and ellipsized description of the Court's holding, *see* Defendants' Motion, at 9, discussing the Court's holding at p. 1292, , thus ignores

_____

[9] By contrast, there can be no serious contention that the commercial activities exception does not apply to this case. See Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint, Docket # 13, at 23-33.

entirely the Court's focus on honoring generally the comity concerns attendant to

unchallenged claims of sovereign immunity. As the Court wrote:

> Furthermore, combating public corruption is a significant international policy. The policy is manifested in treaties providing for international cooperation in recovering forfeited assets….This policy does support the interest of the Pimentel class in recovering damages awarded to it. But it also underscores the important comity concerns implicated by the Republic and the Commission in asserting foreign sovereign immunity. At 2192.

Any arguable "deference" in that case was undoubtedly the result of the pendency

of litigation by the successor agencies tasked with rooting out the corruption of the

preceding administration and locating the assets looted by that administration. At 2190.

Cameroon's attempt in this case to take control of a corruption claim directed at it and its

current high officials is starkly at odds with the legitimate and honest efforts undertaken

by the sovereign in *Pimentel*.

III.   **The Recent Conviction and Sentencing of Mr. Tchoufa and His Wife In Absentia to Decades of Imprisonment and Hard Labor On Trumped Up Charges In Retaliation for the American Litigation Mandates Grant of Plaintiffs' Motion**

On July 11, 2008, seven days before defendants wrote in their opposition that "the

corruption charges against Roger Tchoufa do not disqualify Cameroon as a forum,"

Defendants' Opposition, at 9, Mr. Tchoufa and his wife were convicted *in absentia* and

by "default" of misappropriation of public funds. Second Tchoufa decl., **PX E**, and *see*

Conviction, excerpts of which are appended hereto as **PX K**. Mr. Tchoufa was sentenced

to 45 years of hard labor, and Mrs. Tchoufa was sentenced to thirty years of hard labor.

*Id.*

Neither Mr. Tchoufa nor his wife appeared in the case. *Id.* Their attempts to

provide evidence through counsel were rejected by the court. *Id.* The court's "ruling"

11

nonetheless stated that Mr. Tchoufa's "failure to appear in court denotes that he does not have valuable arguments against the charge levied against him." **PX K.**[10] The court's "ruling" stated again that Mrs. Tchoufa's " failure to appear in court denotes that she does not have valuable arguments against the charge levied against her." *Id.*

The blatantly groundless charges against Mr. Tchoufa need not be addressed again here. It is self-evident from defendants' own filings and their American counsel's half-hearted explanations of the criminal proceedings, including the failed attempt to snatch Mr. Tchoufa in the Ivory Coast, *see* Plaintiffs' Opposition to Motion to Dismiss, at 39, that no one actually believes that there is any merit to the criminal charges against Mr. Tchoufa. Nonetheless, this latest paradigm of Cameroon judicial acquiescence to the demands of its government – in particular its arrogantly-retaliatory conviction and sentencing of Mrs. Tchoufa – sheds new light on plaintiffs' insistence that the Cameroon judiciary is ill-suited to fair resolution of plaintiffs' claims of high level government corruption.

Mrs. Tchoufa is a mother of three children, and is an illustrious Cameroonian lawyer. Declaration of Felicite Tchoufa, ("Felicite Tchoufa decl."), **PX L.** She was neither an officer, nor an employee, of any of the companies in issue in the case. Her sole connection to the events in issue is the use of one of her Cameroon companies as an intermediary to transmit monies owed by Atlantic to MBI in Maryland, none of which was retained by her companies. Second Tchoufa decl., **PX E**, at ¶9. Her companies were

---

[10] Defendants claim that Mr. Tchoufa was prosecuted because "among other things, ...Mr. Tchoufa permitted a corporation owned by Mr. (Joseph) Edou's brother-in-law ... to acquire for a token payment ... a 45% interest in ... the corporation ... that was seeking contracts from Mr. Edou...." Defendants' Opposition, at 9, n. 4. But that claim was debunked in its entirety, and without any challenge or Reply, in Plaintiffs' Opposition to Defendants' Motion to Dismiss Complaint, at 10, n.6. Defendants prudently eschew discussion of the "other things," because they include the absurdity of claiming that South African construction company Group Five, with annual revenues of $500,000,000.00, was a sham or fictive company used by Mr. Tchoufa as a front, *id.* at 24, n.13, and equally preposterous charges.

used solely because they held licenses which allowed the transfers in conformity with Cameroon's currency export regulations. *Id* at ¶¶ 8, 9..

Despite all of the business records and banking records to the contrary, Cameroon charged her with diverting some of the Atlantic monies for the purchase of a property in Cameroon. *See* December 2006 Order, excerpts of which are appended hereto as **PX M.** Aside from the dispositive fact that neither Mrs. Tchoufa nor her companies retained any of the monies, the records clearly show that the property itself was purchased, and almost entirely paid for, in the year prior to the time that any monies were received from Cameroon or CFC. The monies for the purchase, made on an installment basis and thus not completed until a year later, indisputably came from Mrs. Tchoufa's own business. Felicite Tchoufa decl, **PX L**, at ¶ 11.

This court must consider the effect of directing plaintiffs to the very judiciary which, one month ago, sentenced Mr. Tchoufa's *wife* to thirty years of hard labor on charges even more preposterous than the phony claims leveled against Mr. Tchoufa. Plaintiffs are not urging on the court generalized allegations of corruption, *see* June 10, 2008 Memorandum Opinion, at 14-16, nor are plaintiffs relying solely on the actions of Cameroon's executive branch, *id.*, at 16.

Instead, plaintiffs offer the judicary's own transparently corrupt and brazen willingness to do the bidding of the Cameroon, sentencing without a blink or a shudder a well-respected and patently-innocent woman to decades of hard labor because her husband has accused Cameroon's highest officials of corruption. Given an opportunity to prove its independence and its lack of prejudice – and thus its ability to serve as a viable alternative forum to the US court chosen by plaintiffs -- the Cameroon judiciary failed.

Its egregious and callous ruling forecloses any claim that it can fairly hear plaintiffs'

case.

Respectfully Submitted,

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*:    (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:    (240) 632-0906
*Email*: srolinski@rolinski.com

## CERTIFICATE OF SERVICE

I hereby certify that this 18th day of August, 2008, a copy of the foregoing was served electronically via ECF on:

Knox Bemis
*Hunton & Williams LLP*
1900 K Street, NW
Washington, D.C. 20006-1109

Philip M. Musolino