UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MBI GROUP, INC., et al.,

   Plaintiffs,

   v.

CREDIT FONCIER DU CAMEROUN, et al.,

   Defendants.

Civil Action No. 07-0637 (JDB)

MEMORANDUM OPINION

Plaintiffs MBI Group, Inc. and Atlantic Group, SCI (collectively, "plaintiffs") filed suit against Credit Foncier du Cameroun ("CFC") and the Republic of Cameroon (collectively, "defendants") seeking damages for breach of contract, fraud, misrepresentation, intentional interference with contract, and misappropriation of trade secrets and proprietary information. The controversy arises out of an agreement that plaintiffs would construct a series of affordable housing projects in Cameroon, with CFC providing the land and funding for that initiative. As plaintiffs would have it, the deal was scuttled by CFC and Cameroon when plaintiffs refused to deliver bribes demanded by certain officials within the government of Cameroon. Defendants deny the accusations of bribery and insist that there was no binding agreement to begin with.

On September 26, 2007, defendants filed a motion to dismiss, arguing that this case should be dismissed on forum non conveniens grounds. They also claimed that this Court lacked personal and subject matter jurisdiction, and that defendants were immune under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611. Plaintiffs filed a motion for jurisdictional discovery, and both motions were fully briefed.

Thereafter, the Court granted defendants' motion on forum non conveniens grounds. See MBI Group, Inc. v. Credit Foncier du Cameroun, 558 F. Supp. 2d 21 (D.D.C. 2008). The Court applied a three-step test, first determining that an adequate alternative forum existed and then balancing private and public interest factors. See id. at 28-36. The Court considered plaintiffs' argument that the Cameroonian courts would not provide plaintiffs with a fair hearing. Although the Court found plaintiffs' argument unavailing, see id. at 28-31, "in an abundance of caution and to avoid any potential undue prejudice to plaintiffs, the Court . . . condition[ed] dismissal upon defendants' submitting to jurisdiction in Cameroon and on the Cameroonian courts' acceptance of the case," id. at 31. The Court weighed the private and public interest factors, see id. at 32-36, concluding that "[t]he contacts with the United States are simply insufficient to overcome the powerful showing that Cameroon is the far more appropriate forum to hear this matter," id. at 36. The Court did not address defendants' other jurisdictional arguments and denied plaintiffs' motion for jurisdictional discovery. See id.

Two weeks later, on June 24, 2008, plaintiffs filed a motion to vacate the dismissal because the Cameroonian courts had not accepted the case. According to plaintiffs, they submitted their case for filing in Cameroon on June 24, 2008 and were informed that they were required to pay a fee of five percent of the amount claimed for the case to be "accepted for filing." Decl. of Jules Nkana ¶ 1, 4 (attached as Ex. A to Pls.' Renewed Mot. to Vacate Dismissal [dkt. ent. # 54]). Because plaintiffs claimed damages of $500 million -- as they did in their complaint before this Court -- they were required to pay a fee of nearly $25 million for the case to proceed. Rather than challenging the filing fee as excessive or erroneous, plaintiffs sought to vacate this Court's order that required them to utilize the Cameroonian court.

Defendants countered that the $25 million fee had been erroneously calculated by the Cameroonian court's clerk.  See Defs.' Opp'n at 6 [dkt. ent. # 28].  They maintained that such fees are subject to court review and that plaintiffs had made no effort to secure such review.  And although plaintiffs did not seek review of the filing fee, defendants did -- and the Cameroonian High Court scheduled a hearing on this issue for July 23, 2008.  Plaintiffs did not appear for the hearing in Cameroon on July 23, and the hearing was adjourned until August 27, 2008.  Defs.' Sur. at 8 [dkt. ent. # 39].  Plaintiffs again did not appear, and the hearing was again adjourned, this time to October 22, 2008.  Id.

On October 20, 2008, this Court deferred ruling on plaintiffs' motion to vacate dismissal but cautioned that plaintiffs were required to prosecute their action in Cameroon in good faith:

> Plaintiffs' refusal to participate is not the same as the Cameroonian courts' refusal to accept the case.  Implicit in this Court's Order was a command that plaintiffs prosecute their claims in the Cameroonian courts in good faith.  Whatever the merits of plaintiffs' arguments that the deposit procedures will ultimately bar the Cameroonian courts' acceptance of the case, the High Court has, in fact, provided plaintiffs with an opportunity to be heard.  Plaintiffs cannot ignore that opportunity and expect this Court to find that the Cameroonian courts do not provide an adequate alternative forum.  If plaintiffs participate in the Cameroonian proceedings in good faith and the High Court refuses to accept the case without payment of a prohibitively large deposit, then this Court will further consider plaintiffs' motions to vacate and reconsider.

October 20, 2008 Order at 2 [dkt. ent. # 46].

Pursuant to this Court's order, plaintiffs did appear at the October 22, 2008 hearing in Cameroon.  After appearing at the hearing, plaintiffs filed a submission with the Cameroonian High Court on November 11, 2008.  But rather than seeking to persuade the Cameroonian High Court that its case could proceed in Cameroon, plaintiffs asked the court to find, inter alia, "that

bringing a legal proceeding is the exclusive business of the plaintiff within a specific formal legal framework and at his choice and not that of the defendant." See Pls.' Submissions to High Court (attached as Ex. A to Defs.' Feb. 19, 2009 Status Rpt. [dkt. ent. # 48]).  Defendants, meanwhile, argued that the High Court could review and reduce the clerk's filing fee under Cameroonian law. See Defs.' Submissions to High Court (attached as Ex. G to Pls.' Rep. [dkt. ent. # 58]).  The Cameroonian High Court heard oral argument from the parties on December 10, 2008.

On January 14, 2009, the Cameroonian High Court delivered judgment orally in open court, "[d]eclar[ing] the writ by plaintiffs inadmissible for non-payment of court deposit and non-return of the original copy of the writ of summons." Ex. B to Defs.' Feb. 19, 2009 Status Rpt. [dkt. ent. # 48].  On March 31, 2009, the High Court issued its written opinion. See Ex. E to Pls.' Renewed Mot. to Vacate [dkt. ent. # 54].  The High Court reiterated its earlier oral conclusion, finding that "in spite of the numerous postponements . . . , the plaintiffs abstained from producing the original of the summons, the introductory act for a trial by which they drew the defendants before this Court, and to pay the required deposit." Id. at 44.  Hence, the High Court "declare[d] the action of the petitioner inadmissible for failure to make a deposit and to file the original of the summons." Id.

Now before the Court is plaintiffs' renewed motion to vacate dismissal based on the Cameroonian High Court's dismissal of plaintiffs' case.  Plaintiffs also ask this Court to reconsider its analysis of the private and public interests at stake.  The motion is fully briefed and ripe for resolution.

## ANALYSIS

**I. Adequacy of Cameroonian Courts**

Implicit in this Court's dismissal on <u>forum non conveniens</u> grounds was a command that plaintiffs prosecute their action in Cameroon in good faith. <u>See</u> October 20, 2008 Order at 2; <u>see also</u> <u>In re Bridgestone/Firestone</u>, 420 F.3d 702, 705-07 (7th Cir. 2005) (holding that a plaintiff's failure to prosecute its case in Mexico in good faith, thus resulting in dismissal of its case by the Mexican courts, would not warrant reopening a case dismissed on <u>forum non conveniens</u> grounds). Here, once it became apparent to this Court that plaintiffs were ignoring legal options available to them in Cameroon, the Court explicitly cautioned that plaintiffs could not expect their complaints about the deficiencies of the Cameroonian judicial system to carry the day absent a good faith prosecution of their action there. <u>See</u> October 20, 2008 Order at 2. Nonetheless, on the record now before the Court, it is clear that despite the October 20 order, plaintiffs have at every step of the way impeded the Cameroonian courts' ability to consider their case.

As discussed above, two weeks after this Court first dismissed this case, plaintiffs filed suit in Cameroon and were told by the clerk that their case would only be accepted upon payment of a $25 million fee. Nkana Decl. ¶¶ 1, 4. That very same day -- without seeking review of the clerk's fee determination or apparently even pausing to consider that course -- plaintiffs filed a motion to vacate in this Court. Subsequently, after defendants secured a hearing before the Cameroonian High Court to consider the fee issue, plaintiffs failed to appear at successive hearings. Indeed, not until this Court ordered plaintiffs to appear before the Cameroonian court did they do so. And even then plaintiffs continued to resist proceeding in the Cameroonian

courts.

The parties' recent filings show that after this Court explicitly reminded plaintiffs of their obligation to proceed in good faith, plaintiffs sought to terminate, not prosecute, their case in Cameroon. Their written submissions to the Cameroonian High Court urged the court to dismiss the action, arguing "that bringing a legal proceeding is the exclusive business of the plaintiff . . . and not that of the defendant." See Pls.' Submissions to High Court. Plaintiffs reminded the Cameroonian High Court that every civil case has two threshold requirements -- filing an original summons and paying a deposit. Id. Because they had not satisfied either requirement, plaintiffs argued, their case must be dismissed. In effect, then, plaintiffs were seeking to have their own action barred.

Plaintiffs' actions suggest a bold and reckless bad faith. Plaintiffs explain their behavior in two ways. First, they contend that the substantive arguments in favor of reducing the filing fee were, in fact, presented to the Cameroonian court. As plaintiffs would have it, the proceedings in Cameroon were essentially a mirror image of how this Court envisioned them -- with defendants arguing in favor of reducing the filing fee and plaintiffs arguing against it. Thus, plaintiffs maintain, the Cameroonian High Court's dismissal constitutes a rejection of defendants' position that a lower filing fee was proper (or at least possible) under Cameroon's procedural code. But plaintiffs' argument does not get them very far. In dismissing the case, the Cameroonian High Court did not address defendants' arguments about reducing or deferring the filing fee. Instead, the court rested its holding on plaintiffs' failure to comply with threshold procedural requirements. See Pls.' Ex. E. Courts -- whether in Cameroon or in the United States -- cannot force a plaintiff to adhere to such requirements. If, for example, a plaintiff in a U.S. court

refused to serve process on the defendant, then the court would have no choice but to dismiss the case. See Fed. R. Civ. P. 4(m). Similarly, although U.S. courts permit filing fees to be reduced for plaintiffs without adequate financial means, a U.S. court cannot require a plaintiff to file the application needed for in forma pauperis status. Hence, it comes as no surprise to this Court that the Cameroonian High Court would find it necessary to dismiss the case based on plaintiffs' refusal to comply with threshold procedural requirements.

Second, plaintiffs point out that they believe that the filing fee could not have been reduced or deferred, so they should not be expected to have argued in favor of that position in Cameroon. Each side has submitted numerous declarations from Cameroonian lawyers in support of their view as to whether plaintiffs could have sought review of the $25 million filing fee. This Court is ill-suited to weigh the relative merits of each party's interpretation of Cameroon's civil procedure code and to come to a definitive conclusion. But a close analysis of the parties' declarations and the relevant provision of Cameroon's code reveals that defendants appear to have a colorable argument that a portion of the filing fee could have been reduced or deferred. Article 24 of Cameroon's civil procedure code states in pertinent part:

> Except for cases of legal aid, the claimant shall, before the commencement of any proceedings, be bound to pay a sufficient deposit at the registry of the court he intends to seize to guarantee the payment of costs, including stamp duty registration. An additional amount may be requested if in the course of the proceedings it becomes apparent that the amount was insufficient .
> . . . If payment is not made, or in the case of dispute, the amount of the deposit shall be set by order of the President of the Court, upon the simple application of the Clerk, otherwise the case shall not go forward.

Plaintiffs do not contend, nor could they, that they ever challenged the clerk's initial determination requiring a $25 million deposit. Instead, they immediately filed a motion in this

Court decrying the clerk's actions.  But Article 24 plainly contemplates that the clerk's determination is subject to review.  See Art. 24 ("If payment is not made, or in the case of dispute, the amount of the deposit shall be set by order of the President of the Court, upon the simple application of the Clerk . . . .").  Moreover, plaintiffs' own experts appear to recognize that the deposit has several components and that a portion of the deposit may be exempted or deferred.  On the one hand, there are "registry fees," which cannot be altered or deferred.  Decl. of Tehge Hott and Massot Endalle at ¶¶ 20-21 (attached as Ex. K to Pls.' Rep. [dkt. ent. #58]).  According to defendants, this fee is approximately $120.  See Second Decl. of Akere T. Muna ¶ 19 (attached to Defs.' Sur. [dkt. ent. # 39]).  On the other hand, there are "registration and stamp duty fees."  See Hott-Endalle Decl. ¶ 20.  According to plaintiffs' own experts, the provisions of Article 24 "clearly prescribe that even if a physical person or corporate body governed by private law or public law is exempted from payment of registration and stamp duty fees, the Registrar may always require him to pay registry fees for the matter he intends to file before the court to be enrolled on the cause list."  Id. ¶ 21.  In this, plaintiffs' experts appear to agree with defendants' experts, who argue that stamp duty fees may be reduced or at least deferred.  See Second Muna Decl. at ¶¶ 6-10.  And, at least according to defendants' experts, the registry fees might only be $120.  Id. at ¶ 19.  This Court need not decide whether or not defendants' arguments would ultimately carry the day in Cameroon.  It suffices that defendants' arguments are not so lacking in merit as to excuse plaintiffs' duty to proceed in good faith in Cameroon in an attempt to reduce the clerk's initial determination of a $25 million deposit.

In sum, the blame for plaintiffs' case being dismissed by the Cameroonian court must be placed on plaintiffs themselves.  Defendants cannot be faulted despite plaintiffs' earlier

contention that defendants would be able to prevent this case from proceeding in Cameroon. As defendants point out, their inability to persuade the Cameroonian courts to overlook plaintiffs' refusal to pay the deposit or file the summons refutes, in part, plaintiffs' claim that defendants control the Cameroonian judiciary. Nor can the Cameroonian courts' refusal to accept the case be blamed on the courts themselves. Courts in the United States also dismiss cases where plaintiffs refuse to prosecute their case by declining to satisfy threshold requirements. But dismissal on such grounds is not the same as refusing to accept the case. Aside from taking the initial step of filing their case in the Cameroonian court system, plaintiffs have contested every effort at moving the case forward in Cameroon. That is not the good faith the Court contemplated when it directed plaintiffs to prosecute their claims in Cameroon.

**II. Reconsideration of Private and Public Interest Factors**

Plaintiffs also ask this Court to reconsider its analysis of the private and public interests at stake in this litigation. Motions to reconsider are governed by Rule 59(e) of the Federal Rules of Civil Procedure. "'A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); see also Mobley v. Cont'l Cas. Co., 405 F. Supp. 2d 42, 45 (D.D.C. 2005) ("A motion for reconsideration . . . will not lightly be granted."). A Rule 59(e) motion "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it "a vehicle for presenting theories or arguments that could have been advanced earlier." Burlington Ins. Co. v.

Okie Dokie Inc., 439 F. Supp. 2d 124, 128 (D.D.C. 2006); see also Kattan v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993).

The Court previously conducted an extensive analysis of the private and public interest factors at stake here.  See MBI Group, 558 F. Supp. 2d at 32-36.  In their motion for reconsideration, plaintiffs do not point to an intervening change of controlling law, new evidence, or clear error or manifest injustice, as is required by Rule 59(e).  See Ciralsky, 355 F.3d at 671.  Rather, they simply resurrect the arguments this Court previously considered and found unpersuasive.

In dismissing this case on forum non conveniens grounds, this Court did not find the interests analysis to present a close question.  Although the adequacy of the alternative forum was sufficiently close to warrant a conditional dismissal, the Court held that "[t]he contacts with the United States are simply insufficient to overcome the powerful showing that Cameroon is the far more appropriate forum to hear this matter."  MBI Group, 558 F. Supp. 2d at 36 (emphasis added).  Plaintiffs offer no basis to alter that assessment.  Hence, their motion for reconsideration of the private and public interest factors falls well short of the standard set forth by Rule 59(e).

## CONCLUSION

On the record before the Court, the failure of plaintiffs' case in Cameroon can be blamed only on plaintiffs themselves.  Hence, plaintiffs' argument -- that acceptance of the case by the Cameroonian courts, a condition of this Court's dismissal, has not been met -- falls flat.  Nor have plaintiffs' made a showing as to why the Court should reconsider its conclusion that, on balance, the private and public interest factors weigh heavily in favor of this dispute being resolved in Cameroon.  Accordingly, plaintiffs' motion will be denied.  A separate order

accompanies this opinion.

**SO ORDERED**.

/s/
JOHN D. BATES
UNITED STATES DISTRICT JUDGE

Date: June 23, 2009